James BALLARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0703–CR–144.

Court of Appeals of Indiana.

Dec. 12, 2007.

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Following a bench trial, James Ballard appeals his conviction for battery as a Class C felony.[1] On appeal, he raises two issues, of which we find the following to be dispositive: Whether the trial court erred in admitting the victim's statement to police as substantive evidence under Ind. Evidence Rule 803(5)'s recorded recollection exception to the hearsay rule.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In September 2006, Indianapolis Metropolitan Police Department Officer Gregory Slaven was dispatched to a home on West 29th Street in Indianapolis. *Tr.* at 59. As Officer Slaven approached the house, Alisa Hatchett ran off the porch and flagged him down. Hatchett was visibly shaking and had blood dripping from the side of her neck. Based on information provided by Hatchett, Officer Slaven began looking for Ballard, a man with whom Hatchett had been sporadically involved.

About an hour later, Officer Slaven found Ballard riding his bicycle and stopped him. The police noticed that Ballard had alcohol on his breath and asked him if he had any weapons. Ballard admitted that he had a folding knife. Officer Slaven arrested Ballard after he retrieved the knife from Ballard's pocket.

1. *See* IC 35–42–2–1.

Three days later, Detective Douglas Wright went to Hatchett's residence and, using a digital recorder, taped Hatchett's statement, which implicated Ballard and provided details about the attack on the night in question. After the statement was transcribed, police lost the original recording. The State charged Ballard with criminal confinement, a Class B felony, intimidation, a Class C felony, and battery, a Class C felony.

During his subsequent bench trial, Hatchett claimed to have no memory of the night in question. The State then read excerpts from the transcription of statements Hatchett made to Detective Wright under the hearsay exception of recorded recollection pursuant to Evid. R. 803(5). At the close of the State's evidence, the trial court sustained Ballard's motions for involuntary dismissal of the confinement and intimidation counts pursuant to Ind. Trial Rule 41(B). The trial court convicted Ballard of battery and sentenced him to five years in prison. Ballard now appeals.

## DISCUSSION AND DECISION

Ballard contends that the statement Hatchett gave to Detective Wright on September 11, 2006, was improperly admitted hearsay; therefore, his conviction should be reversed. Specifically, Ballard contends that the trial court erred in admitting Hatchett's statement under Evid. R. 803(5)'s "recorded recollection" hearsay exception when Hatchett did not adopt the statement, and there was insufficient evidence that the statement was accurate.

In general, the decision to admit or exclude evidence, including purported hearsay, is within a trial court's sound discretion and is afforded great deference on appeal. *Agilera v. State*, 862 N.E.2d 298, 302 (Ind.Ct.App.2007), *trans. denied;*

*Carpenter v. State,* 786 N.E.2d 696, 702 (Ind.2003). We will not reverse the trial court's decision unless it represents an abuse of discretion that results in the denial of a fair trial. *Agilera,* 862 N.E.2d at 302. An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.*

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Evid. R. 801(c). Hearsay evidence is generally inadmissible pursuant to Evid. R. 802. *See Cook v. Whitsell–Sherman,* 796 N.E.2d 271, 278 (Ind. 2003) (hearsay rules generally prohibit introduction of evidence of out-of-court statements to prove truth of matters asserted in those statements). Evid. R. 803, however, enumerates exceptions to the hearsay rule. *See Marcum v. State,* 772 N.E.2d 998, 1001 (Ind.Ct.App.2002).

■ Evid. R. 803(5) provides the following exception to the hearsay rule:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

"[B]efore a statement can be admitted under the recorded recollection hearsay exception, certain foundational requirements must be met, including some acknowledgment that the statement was accurate when it was made." *Williams v. State,* 698 N.E.2d 848, 850 n. 4 (Ind.Ct.App.1998), *trans. denied.* A trial court should not admit a witness's statement into evidence when the witness cannot vouch for the accuracy of the statement nor remember having made the statement. *See Kubsch v. State,* 866 N.E.2d 726, 735 (Ind.2007) (trial court correctly denied introduction of witness statement when witness could not vouch for statement she could not even remember making).

■ During Ballard's bench trial, Hatchett was called as a witness for the State. Initially, she refused to answer any questions, claiming that she was "plead[ing] the Fifth." *Tr.* at 24. After the State granted her full immunity from any charges arising from this crime, Hatchett continued to answer the State's questions in an equivocal manner and gave testimony that raised questions as to the validity of her prior statements. Hatchett claimed she did not know whether she had a relationship with Ballard and further was unsure whether she saw him on the night in question. *Id.* at 35. She testified that, although she recognized Detective Wright, she did not remember seeing him on September 11, 2006—the day he came to her house to take her statement. *Id.* Hatchett indicated that seeing her prior written statement would not help her remember. *Id.*

During preliminary questioning from the defense, Hatchett stated that she could not remember anything because she does not have a good memory. She further stated that her memory was impaired because she is drunk almost every day. *Id.* at 39. In an effort to evoke information obtained during Detective Wright's interview, the State showed Hatchett her transcribed statement. *Id.* at 36. Hatchett initially claimed that she could not see the transcribed statement, but when questioned further, she stated that, although she needed glasses, she could see some of the document.

Due to her refusal to testify, the State asked for and was granted permission to

treat Hatchett as a hostile witness. *Id.* at 40. The State then asked whether Hatchett remembered telling Detective Wright about the events that occurred between herself and Ballard on the evening in question. Hatchett responded, "I don't know what I said." *Id.* at 40. The State then queried, "But you do remember giving a statement?" to which Hatchett responded, "I don't know what all I said." *Id.* Frustrated by these answers, the State posed the leading question: "And you told [Detective Wright] that day that you and James had gotten into an argument; isn't that correct?" *Id.* at 41. Ballard objected contending that Hatchett's answer would be hearsay.

Discussion ensued regarding whether the evidence could be properly admitted over objection as "recorded recollection" pursuant to Evid. R. 803(5). The trial court overruled Ballard's objection and allowed the State to read portions of Hatchett's statement into the record. *Id.* at 44–48. Hatchett's prior statement identified Ballard as her attacker and described the circumstances of the attack. *Id.* at 48–49. The statement also included a description of the knife used in the attack. *Id.*

Upon further questioning, Hatchett did not confirm her previous statements. While she admitted that she went to the hospital because of injuries, Hatchett claimed that she goes to the hospital all the time. *Id.* at 53. Hatchett also denied knowing whether she had spoken to a detective about this incident. *Id.* On cross-examination, Hatchett claimed that she probably said a lot of things to Detective Wright that were not true. Hatchett suggested that her daily habit of drinking gin caused her memory to lapse and also caused her to give Detective Wright an inaccurate account of the evening in question. *Id.* at 54–55. Finally, on redirect,

the State pointed to cuts depicted in admitted photographs and attempted to have Hatchett acknowledge that the cuts resulted from Ballard's actions. Hatchett's only response was, "I don't know what it is I could have fell on some glass." *Id.* at 56.

On appeal, Ballard contends that the State failed to lay a proper foundation for the introduction of the prior recorded statement pursuant to Evid. R. 803(5). We agree. "The recorded recollection exception applies when a witness has insufficient memory of the event recorded, but the witness must be able to 'vouch for the accuracy of the prior [statement].'" *Kubsch,* 866 N.E.2d at 734 (quoting *Gee v. State,* 271 Ind. 28, 36, 389 N.E.2d 303, 309 (1979)); *see also Williams,* 698 N.E.2d at 850–51 n. 4. Here, the State failed to show that the recorded recollection correctly reflected Hatchett's knowledge. Hatchett did not vouch for the accuracy of the statement to Detective Wright—a statement that she did not remember making. Accordingly, the excerpts from the transcribed statement should not have been admitted under Evid. R. 803(5).

■ The question next arises whether this error was harmless. When Officer Slaven responded to the call on September 8, 2006, he found an injured Hatchett alone at her house. While Officer Slaven testified on direct examination as to Hatchett's identification of Ballard, this evidence was provided to the court only as proof of why Officer Slaven acted as he did.

Q  Okay. For the purposes of identifying what you did next in your-in your investigation, what was the identification that you were given; who were you lookin' for?

A Basic—the victim stated that James Ballard had cut her, and I also—besides the description, I also knew him.

*Tr.* at 66.

■ The State, anticipating that the defense would object to the above statements

as hearsay, preemptively asserted that Officer Slaven's identification testimony was not offered to prove the truth of the matter asserted, instead, the statement was offered to identify what Officer Slaven did next in the investigation. *Id.* "An out-of-court statement introduced to explain why a particular course of action was taken during a criminal investigation is not hearsay because it is not offered to prove the truth of the matter asserted." *Goodson v. State,* 747 N.E.2d 1181, 1185 (Ind.Ct.App. 2001), *trans. denied; Patton v. State,* 725 N.E.2d 462, 464 (Ind.Ct.App.2000). "Even so, we require a reasonable level of assurance that such testimony was neither offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement." *Goodson,* 747 N.E.2d at 1185; *Owens v. State,* 659 N.E.2d 466, 476 (Ind.1995). In the absence of the recorded recollection and the fact-finder believing the truth of the statement that Ballard was the attacker, there was very little, if any, other evidence to link Ballard to Hatchett's injuries.

Here, the State's primary proof was Hatchett's September 11 statement. Without it, there was insufficient evidence to convict Ballard. While we sympathize with the trial court's efforts to find a proper basis for admitting evidence in domestic battery cases when the complaining witness recants, we are unable to say that the improper admission of portions of Hatchett's September 11 statement was harmless error.

Reversed.

ROBB, J., and BARNES, J., concur.