Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Appellate Public Defender
Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED
May 17 2012, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODERICK RAMONE WIGGINS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1106-CR-291 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-0707-MR-5

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Roderick Ramone Wiggins ("Wiggins") appeals after a jury trial from his convictions and sentence for three counts of murder,[1] a felony. Wiggins presents the following issues for our review:

I. Whether the trial court abused its discretion when it denied Wiggins's motion for mistrial based on alleged prosecutorial misconduct;

II. Whether the trial court abused its discretion by limiting some cross-examination;

III. Whether the trial court abused its discretion by admitting evidence of Wiggins's prior firearm possession;

IV. Whether the trial court abused its discretion by excluding certain hearsay statements;

V. Whether the trial court abused its discretion by admitting a photograph of one of the victims; and

VI. Whether Wiggins's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 19, 2005, Latrina Cobb ("Cobb") went to Leonard ("Pops") Thomason's house, which was often used as a location for smoking cocaine. Cobb observed that the door to Pops's house was open, and when she looked inside, she saw Pops, Anthony Hamilton ("Anthony"), and Monica Bailey-Gilbert ("Monica"), on the floor with pools of blood around their heads. Cobb left Pops's house and attempted to contact the victims' relatives, but did not contact law enforcement officers. A neighbor, however, did call 911,

---

[1] Ind. Code § 35-42-1-1.

2

and law enforcement officers arrived at about 11:30 p.m. that night.

Detective Christopher Stark ("Detective Stark") and Officer John Allen ("Officer Allen") of the Gary Police Department responded to the dispatch regarding a homicide. When Detective Stark and Officer Allen arrived at the scene of the dispatch, they noticed nothing unusual at the address given. As they returned to their squad cars, however, they observed another house nearby where the lights were on, and a door was standing open. They investigated that house because those circumstances were unusual on a snowy night, and they had been dispatched to investigate the report of a homicide in the area. When the officers entered the home, they saw three bodies lying on the floor, two of which were male, and one which was female. Each person had died from gunshot wounds, and shell casings and blood surrounded the bodies. The Lake County Sheriff's Department's Crime Lab later determined that three different firearms were used in the shootings, a .40 caliber firearm, a .45 caliber firearm, and "something from the [.]35 caliber family." *Tr.* at 352. Drug paraphernalia, including syringes and a spoon, and some pills, were located in the house.

Law enforcement officers had no successful leads in the investigation until an individual came forward in 2007, more than a year later, implicating Wiggins's involvement in the triple homicide, and also providing the names of Anthony Floyd ("Tony"), Joshua Hopkins ("Joshua"), and Percy Hughes ("Percy"). Gary Police Detective James Bond ("Detective Bond") interviewed Wiggins on three occasions. In the last two statements, Wiggins confessed that he had killed Pops. In the first two statements, he implicated Tony and Joshua as the other shooters. In the third, he implicated Tony and Percy, and exonerated

3

Joshua.

The details that emerged from Wiggins's statements and confessions were that Corey Taylor ("Corey") had ordered a contract killing of the victims because they were cooperating with law enforcement in their investigation of Tony and Joshua. In December 2003, the State had charged Pops with one count of attempted murder, two counts of dealing in cocaine, two counts of possession of cocaine, and one count of dealing in marijuana. Pops entered into a plea agreement in March 2004 wherein he agreed to cooperate and testify in the cases against Tony and Joshua. Pops was also to testify against Corey.

In December 2005, law enforcement searched Pops's house. Wiggins, Corey, and Tony discussed the search shortly after it happened. Wiggins viewed Tony as an associate and Corey as a friend. Because of Pops's cooperation with law enforcement, Corey and Tony "felt that the heat was drawing down on both of them." *Tr.* at 440. Corey told Wiggins that "it's getting to [sic] hot but I got money on theirs [sic] heads." *Id.* Corey correctly believed that Pops was cooperating with federal law enforcement in a case against Corey. Corey ordered a contract killing of Pops.

On December 19, 2005, Wiggins, Tony, and Percy, another of Corey's associates, smoked a blunt and started to walk towards Pops's house to kill Pops, Anthony, who was a confidential informant living at Pops's house, and Monica. When they arrived, they knocked on the door, and Pops allowed them to enter. When Wiggins, Tony, and Percy sat on a couch in the living room, Anthony and Monica left for a room in the back of the house. Tony then confronted Pops about whether he was going to testify against him. Pops refused to answer

4

and started to walk away.

Tony demanded that Pops remain in the living room, to which Pops replied that he was not going to talk about testifying. Tony then drew a gun on Pops and ordered him to remain in the living room. Tony also yelled at Anthony and Monica, ordering them to return to the living room. Tony then ordered the three to lie face-down on the living room floor, and the three complied. Wiggins shot Pops in the back of the head, killing him. Wiggins stated that Percy then shot Monica, and Tony shot Anthony.

The State charged Wiggins with three counts of murder. At the conclusion of a five-day jury trial, Wiggins was found guilty on all three counts. The trial court sentenced Wiggins to forty-five years executed on each count, to be served consecutively for an aggregate sentence of 135 years. Wiggins now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Motion for Mistrial

Wiggins argues that the trial court abused its discretion when it denied his motion for mistrial. Wiggins claims that the State engaged in prosecutorial misconduct during closing argument by a statement made in an objection to defense counsel's closing argument. Wiggins did not testify at trial and did not call any witnesses to testify in his defense at trial. During Wiggins's closing argument, the following argument was made with respect to Wiggins's statements and confessions to law enforcement:

5

DEFENSE: Roderick is there for what, at a minimum it's a three-hour sit down at the jail. Roderick, nineteen years old at the time, an unsophisticated guy, in many respects.

STATE: Judge, I'm going to object to counsel's characterization of the defendant as unsophisticated. There's been no evidence to that affect at all.

\* \* \*

THE COURT: The objection is overruled.

\* \* \*

DEFENSE: Somebody who is perhaps strong minded, somebody who just knows better, if you will, is not going to commit to something like this. But we have Roderick who, there's no indication that he's strong minded. He's dirty, he's got his long hair, you might say he's weak minded and he's someone who is missing something in his life.

STATE: Judge, again, I'm going to object. Defense counsel is inviting the jury to speculate. His client had the right to take the stand - -

DEFENSE: Your Honor, that - -your Honor, your Honor, they are burden shifting. We have - - may we approach?

THE COURT: No. Your objection is sustained.

DEFENSE: Your Honor, may I please approach and make a record.

THE COURT: A record of what, Mr. Scheele?

DEFENSE: Your Honor, I'd rather not state it out loud in open court in front of the jury.

THE COURT: The State indicated that he has the right to take the stand.

DEFENSE: Yes, your Honor. That's burden shifting. That is fundamentally improper.

6

THE COURT:　　That is his right to do so, as is his right not to do so. That's already been explained to the jury.

*Tr.* at 633-38. Counsel for Wiggins then continued to speak to the jury about the State's burden of proof and how that burden cannot be shifted to the defense.

At the conclusion of the closing arguments, the trial court held a bench conference with both the State and defense counsel. The trial court explained its policy of allowing the parties to make their closing arguments without many interruptions and noted that several objections were made. The trial court then allowed the parties to make a record regarding their objections to conduct of opposing counsel during closing argument. Defense counsel argued that the State's comment about Wiggins's right to testify, made during her objection, constituted fundamental error. The State replied that the comment was made in response to defense counsel's argument that Wiggins was unsophisticated and weak-minded. The State asserted that there was no evidence in the record to support that argument, and that Wiggins could have made such a record by testifying. Defense counsel moved for a mistrial, which the trial court denied, and in so doing stated as follows:

> Well, I'm going to deny your motion. In the heat of a closing argument, a great many things are said and sometimes the parties cross the line somewhat. Now, the Court is going to give an instruction as to the defendant's right to testify or not. I believe that would cure any comment that the State made. The State correctly stated the law. He does have the right to testify. He has the right not to testify. I don't see where that comment standing alone amounts to fundamental error. Now, perhaps had the State gone further with that, then we may be in a bit of a gray area on that issue. But the State stopped at that one particular statement. It is a correct statement of the law. Had the defense said the defendant has an absolute right not to testify, that too is a correct statement of the law. So, while you found the statement troublesome during your closing, I don't see how, I don't see what's objectionable about it.

7

*Id*. at 682-84.

Final Instruction 15, which was given by the trial court, instructed the jury that they were to presume that the defendant was innocent unless the prosecution proves the defendant's guilt beyond a reasonable doubt, and that the defendant is not required to present any evidence to prove his innocence or to prove or explain anything. Final Instruction 16, which also was given by the trial court, instructed the jury that the defendant may choose to testify or not and that in this case, the defendant's decision not to testify should not be considered as evidence of guilt.

When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. *Williams v. State*, 724 N.E.2d 1070, 1080 (Ind. 2000). We then consider whether the alleged misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Id*. "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id*.

A prompt objection to alleged prosecutorial misconduct allows the trial court an opportunity to prevent or remedy any prejudice to a defendant without the waste of time and resources involved in the reversal of a conviction. *Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999) (citing *Maldonado v. State*, 265 Ind. 492, 498, 355 N.E.2d 843, 848 (1976)). If a defendant does not object to the alleged misconduct, any claim of error is waived. *Id*. In

addition to objecting to alleged misconduct, a defendant must also request an appropriate remedy. *Id.* In general, the correct procedure involves a request for an admonishment. *Id.* If trial counsel is not satisfied that an admonishment will be sufficient to cure the error, then counsel may move for a mistrial. *Id.* The failure to request either an admonishment or mistrial results in waiver of the issue. *Id.*

Defense counsel did object to the State's comment and presented his argument in the presence of the jury. The trial court pointed out that the State said the defendant had a right to testify and that statement was a correct statement of the law. The trial court also noted that the defendant had a right not to testify. After the exchange, defense counsel continued with his closing argument, reiterating to the jury the State's burden of proof beyond a reasonable doubt, and that the burden could not be shifted to the defendant.

Wiggins twice confessed to killing Pops and admitted on three occasions that he was present when the murders took place. During closing argument, defense counsel attempted to explain to the jury that the reason Wiggins confessed was because he was unsophisticated and weak-minded. The State objected to that characterization of Wiggins because there was no evidence in the record to support it, and that if Wiggins wished to present that evidence, he had the right to testify. We agree with the trial court that the State's comment was not a suggestion to infer guilt from Wiggins's silence at trial, but rather a comment on the lack of evidence to support that theme in the defense's closing argument. As such, the statement did not constitute prosecutorial misconduct.

9

Even if we were to decide that the trial court erred, a decision we do not reach, Wiggins was not placed in a position of grave peril by the comment. Wiggins confessed to killing Pops. Furthermore, the trial court correctly instructed the jury about Wiggins's right to remain silent. Final instructions are presumed to cure such error alleged to have occurred during closing argument. *Hudgins v. State*, 451 N.E.2d 1087, 1091 (Ind. 1983). The trial court correctly denied the motion for mistrial.

## II. Limitation on Cross-Examination

Wiggins claims that the trial court committed reversible error by limiting his cross-examination of Detective Bond. In particular, Wiggins wanted to question Detective Bond about inconsistencies in the three statements Wiggins gave to police.

Before the first interview on July 18, 2007, Detective Bond read Wiggins his *Miranda* warnings, and Wiggins initialed a consent form. In his statement, Wiggins provided details about the murders that were not available to the general public. Wiggins claimed that Corey had ordered the contract murders. Wiggins stated that he was present at Pops's house when Tony murdered Pops and Anthony and Joshua murdered Monica, but only served as a lookout for them. Wiggins correctly identified Corey, Tony, and Joshua from separate photo arrays. Wiggins signed the statement after reviewing it for errors.

Wiggins was interviewed a second time the next day. Detective Bond read Wiggins his *Miranda* warnings, and Wiggins initialed a second consent form. In this statement, Wiggins admitted that he was the one who murdered Pops and was present when Joshua and Tony murdered Anthony and Monica on behalf of Corey. He also described to Detective

10

Bond how he had disposed of the gun used in the murder and the clothes he wore. He attempted to explain the discrepancies between his statements. Wiggins then signed the second statement after reviewing it for errors.

The last time Detective Bond interviewed Wiggins was on July 23, 2007, and Wiggins had been charged with Pops's murder. Detective Bond read Wiggins his *Miranda* warnings, and Wiggins initialed a third consent form. Wiggins acknowledged that he had been charged with murdering Pops. In his third statement, Wiggins confessed to shooting Pops and claimed that Tony had murdered Anthony, but exonerated Joshua. Instead, Wiggins claimed that Percy was the one who used Wiggins's gun to murder Monica. Wiggins signed the third statement after reviewing it for errors. Wiggins was charged with three counts of murder.

The right to cross-examination is guaranteed by the Sixth Amendment to the United States Constitution and is one of the fundamental rights of our criminal justice system. *Washington v. State*, 840 N.E.2d 873, 886 (Ind. Ct. App. 2006). However, this right is subject to reasonable limitations imposed at the discretion of the trial court. *Id*. Trial courts retain wide latitude to impose reasonable limits on the right to cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Id*. We will find an abuse of discretion when the trial court controls the scope of cross-examination to the extent that a restriction substantially affects the defendant's rights. *Id*. The Indiana Constitution affords criminal defendants a similar guarantee, providing that "the accused shall have the right . . . to meet the witnesses face to face." Ind. Const. art. I, § 13(a). Our

11

supreme court has interpreted this amendment as requiring that a defendant has the right to cross-examine witnesses against him at trial. *Pigg v. State*, 603 N.E.2d 154, 155 (Ind. 1992).

During cross-examination, Wiggins asked Detective Bond: 1) if he agreed that a certain portion of one of the statements was the most pivotal or crux of the statement; 2) what he thought was the most important part of one of the statements; 3) whether he agreed that the first statement was riddled with inaccuracies; and 4) what was true or false about one of the statements. The trial court sustained the State's objections to those lines of questioning. Wiggins claims that the trial court abused its discretion by so limiting his cross-examination of Detective Bond.

No witness, lay or expert, is competent to testify that another witness is or is not telling the truth. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). Indeed, Indiana Evidence Rule 704(b) provides that witnesses may not testify to their opinions of guilt or innocence in a criminal case, legal conclusions, the truth or falsity of allegations, or whether a witness has testified truthfully. In this case, the three statements with their attendant inconsistencies were admitted in evidence. Those statements, two of which contained Wiggins's confession, were the best evidence of the inconsistencies and evolution of Wiggins's story about the events surrounding the murders. Although the State did object during closing argument to Wiggins's counsel's characterization of Wiggins as weak-minded and unsophisticated, defense counsel was not denied the opportunity to expose the inconsistencies among the statements. The trial court did not abuse its discretion in limiting cross-examination of Detective Bond.

### III. Admission of Evidence

Wiggins contends that the trial court committed reversible error by failing to redact a portion of one of Wiggins's statements wherein he stated he had carried or used a gun in the past, and that he was being held on charges that he had no permit to carry a handgun when he gave the statements to Detective Bond. Wiggins claims that the trial court abused its discretion in admitting that unredacted statement.

Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Dawson v. State*, 786 N.E.2d 742, 745 (Ind. Ct. App. 2003). A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. *Pruitt v. State*, 834 N.E.2d 90, 117 (Ind. 2005). Even if the trial court errs in admitting or excluding evidence, this court will not reverse the defendant's conviction if the error is harmless. *Fleener v. State*, 656 N.E.2d 1140, 1141-42 (Ind. 1995).

Wiggins objected when the State sought to introduce the statement in which he admitted carrying a .45 caliber handgun on a previous occasion. The evidence adduced at trial showed that a .45 caliber handgun was used in the murders. Also over objection, Detective Bond testified that Wiggins was being held on a gun charge when Detective Bond

questioned him about the murders. Wiggins argues that the evidence was inadmissible evidence of prior misconduct.

Indiana Evidence Rule 404(b) provides as follows regarding evidence of prior misconduct:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

When evidence is challenged under Rule 404(b), the trial court should determine: (1) whether the evidence is relevant to a matter at issue rather than just the defendant's propensity to commit the crime; and (2) whether the probative value outweighs the prejudicial effect. *Dickens v. State*, 754 N.E.2d 1, 4 (Ind. 2001).

Prior bad acts may not be used to show propensity to commit the crime charged, but they may be allowed for other purposes, such as those set forth in the non-exclusive list set forth in Indiana Evidence Rule 404(b). *Id*. Our Supreme Court has held that "[i]t is by no means clear that weapons possession, evidence of gun sales, and the like, are necessarily prior 'bad acts' for 404(b) purposes." *Williams v. State*, 690 N.E.2d 162, 174 (Ind. 1997). The handgun evidence did not constitute evidence of a prior bad act.

Furthermore, the evidence that Wiggins had previously carried a .45 caliber handgun was relevant evidence since a .45 caliber handgun was used in the murders. Additionally, the evidence of gun possession was relevant to show Wiggins's opportunity to commit the

14

murders or supply the handgun to the others. *Dickens*, 754 N.E.2d at 4. The evidence that a defendant had access to a weapon of the same type used in the charged crime is relevant evidence. *Pickens v. State*, 764 N.E.2d 295, 299 (Ind. Ct. App. 2002). We agree with the trial court that the probative value of this evidence outweighs any prejudicial effect.

As for Wiggins's argument concerning the evidence that he was in custody at the time he made the statements to Detective Bond, we conclude that Wiggins opened the door to the evidence. "Inadmissible evidence may become admissible where the defendant 'opens the door' to questioning on that evidence." *Wales v. State*, 774 N.E.2d 116, 117 (Ind. Ct. App. 2002). "Generally, when a defendant injects an issue into the trial, he opens the door to otherwise inadmissible evidence." *Stokes v. State*, 908 N.E.2d 295, 302 (Ind. Ct. App. 2009). Such was the case here.

During Wiggins's cross-examination of Detective Bond, Wiggins's counsel elicited Detective Bond's confirmation that the first statement was taken at the Gary Police Department and that Wiggins was in custody at the time. When asked if Wiggins was there voluntarily, Detective Bond responded in the negative. The inference left by that questioning was that Wiggins's statement was in fact coerced. That line of questioning opened the door to the State's questioning on re-direct examination clarifying why Wiggins was in custody. Detective Bond responded that Wiggins was in custody for a charge involving the failure to have a permit for a handgun. The trial court correctly concluded that Wiggins opened the door to evidence that Wiggins was in custody, and that the State should be allowed to clarify that evidence. The trial court did not abuse its discretion.

## IV. Exclusion of Hearsay Statements

Wiggins asserts that the trial court committed reversible error by failing to allow defense counsel to question Cobb about a conversation she overheard between two of the victims. During the cross-examination of Cobb, Wiggins asked if she had observed Anthony and Monica having an argument. Wiggins claimed that, according to Cobb, Monica had once told Anthony that she was going to tell everyone on the street that Anthony was an informant and that he was going to be a dead man. Cobb claimed that Monica indicated she was going to tell an individual named Reggie. Ultimately the State's objection on both relevance and hearsay grounds was sustained by the trial court. Wiggins claims that this was error.

In general, the decision to admit or exclude evidence, including purported hearsay, is within a trial court's sound discretion and is afforded great deference on appeal. *Ballard v. State*, 877 N.E.2d 860, 861-62 (Ind. Ct. App. 2007). We will not reverse the trial court's decision unless it represents an abuse of discretion that results in the denial of a fair trial. *Id.* at 862. An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.*

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay, generally, is inadmissible. Evid. R. 802. Statements not offered for their truthfulness are not hearsay. *Treadway v. State*, 924 N.E.2d 621, 635 (Ind. 2010).

16

Wiggins was attempting to elicit one of Monica's statements through Cobb's testimony at trial. The particular statement by Monica sought to be admitted would have been inadmissible hearsay. Although Wiggins argues that there are exceptions to the hearsay rule, he does not advance which of those exceptions would apply here. Furthermore, Wiggins has failed to show that the evidence he sought to introduce was relevant. Whether Corey or Reggie ordered the murder-for-hire is irrelevant. Wiggins proceeded to act on the murder-for-hire regardless of who ordered it. The trial court did not err by excluding the irrelevant, hearsay evidence.

## V. Photographic Evidence

Wiggins contends that the trial court abused its discretion when it admitted a photograph of one of the victims. Monica's father testified at trial, and the State sought to introduce a photograph of Monica through his testimony in order to establish her identity. Monica's father identified the photograph as a family portrait. Defense counsel objected that the photograph was previously produced in discovery, that it was irrelevant, and that it was objectionable on hearsay grounds. The trial court overruled the objection. Monica's father identified her in the photograph. Wiggins claims on appeal that the trial court erred because the admission of the photograph was unduly prejudicial.

Wiggins's argument on appeal is different from his argument at trial. A party may not object on one ground at trial and then assert a different ground on appeal. *Warren v. State*, 725 N.E.2d 828, 833 (Ind. 2000). Waiver notwithstanding, assuming *arguendo* that it was an abuse of discretion for the trial court to admit a photograph of Monica with her family when

a non-family photograph was readily available and later introduced into evidence, such error was harmless in light of Wiggins's confession. "An error in the admission of evidence does not justify setting aside a conviction unless the erroneous admission appears inconsistent with substantial justice or affects the substantial rights of the parties." *Udarbe v. State*, 749 N.E.2d 562, 567 (Ind. Ct. App. 2001). "Such error is harmless when substantial independent evidence of guilt supports the conviction such that the reviewing court is satisfied that the erroneous admission of evidence played no role in the conviction." *Id.* Wiggins gave three statements in two of which he confessed to committing murder and provided details unavailable to the general public. We find no reversible error in the admission of the photographic evidence.

## VI. Inappropriate Sentence

Wiggins claims that his aggregate sentence of 135 years executed is inappropriate in light of the nature of the offense and the character of the offender. Trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E2.d 218 (Ind. 2007). The statement must include a reasonable detailed recitation of the trial court's reasons for imposing a particular sentence. *Id.* If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating. *Id.*

Appellate courts may revise a sentence after careful review of the trial court's decision

18

if they conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Even if the trial court followed the appropriate procedure in arriving at its sentence, the appellate court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State*, 834 N.E.2d 713, 718 (Ind. Ct. App. 2005). The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).

Although Rule 7(B) does not require us to be extremely deferential to the trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*. Whether a sentence is inappropriate in the final analysis turns on the culpability of the defendant, the severity of the crime, the damage done to others, and innumerable other factors. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

We initially observe that despite the trial court's finding that the aggravating circumstances outweighed those in mitigation, the trial court imposed the minimum sentence of forty-five years for each of the counts of murder. *See* Ind. Code § 35-50-2-3 (fixed term of between forty-five and sixty-five years with the advisory sentence being fifty-five years). Nonetheless, Wiggins argues on appeal that his youth at the time of the murders, i.e., seventeen years of age, in part, warrants the imposition of concurrent, not consecutive sentences. The imposition of consecutive sentences can be justified by the fact that there are

19

multiple victims in the case and recognizes the separate harms against separate victims. *Townsend v. State*, 860 N.E.2d 1268, 1273 (Ind. Ct. App. 2007).

Regarding the character of the offender, Wiggins murdered a man because the man agreed to be a witness against one of Wiggins's friends. Wiggins has one misdemeanor conviction involving a handgun offense, but also admitted to using marijuana on a daily basis since he was fifteen years old, and using cocaine for at least a year. Wiggins was only seventeen years old at the time he committed the murder, and thus, youthful; however, this fact establishes that he had little time in those seventeen years to accrue a criminal history prior to taking part in a contract murder. He admitted to substance abuse, but had not been prosecuted for that prior to the murder. Wiggins has never had any gainful, lawful employment, but instead befriended those involved in drug-dealing activities.

Regarding the nature of the offense, Wiggins carried out a murder-for-hire during the course of which the victims were shot in the back of the head while lying face-down on the floor. Wiggins's friends were starting to feel pressure from the investigation into drug-dealing activities and ordered that a witness in the case against them be killed. Even though Wiggins was not a target of the investigation, he carried out the contract killing. Wiggins has failed to carry his burden of persuading this court that his sentence is inappropriate. *King*, 894 N.E.2d at 267.

Affirmed.

BAKER, J., and BROWN, J., concur.