## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2017, 9:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John C. Bohdan
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Elias N. Berrum, *Appellant-Defendant,* | May 16, 2017 |
| | Court of Appeals Cause No. 02A03-1607-CR-1673 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable John F. Surbeck, Jr., Judge |
| | Trial Court Cause No. 02D05-1510-FA-14 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Elias Berrum (Berrum), appeals his conviction for child molesting, a Class A felony; child molesting, a Class C felony; and child molesting, a Level 4 felony.

[2] We affirm.

# ISSUE

[3] Berrum presents one issue on appeal, which we restate as: Whether the trial court abused its discretion by admitting into evidence a videotaped interview of a child-witness under the recorded recollection exception to the hearsay rule.

# FACTS AND PROCEDURAL HISTORY

[4] V.R. was born on October 30, 2001. In 2003, V.R.'s mother (Mother) began dating Berrum.[1] In the following year, the two resided in a townhouse in Fort Wayne, Indiana. In 2007, Mother and Berrum got married; however, in August of 2008, the two separated. At the time, Mother worked overnight at McDonald's and on occasion, she would request Berrum to babysit V.R. and

---

[1] The record shows that Mother had another daughter, A.M.R. in 2002; A.M.R. and V.R. share a biological father. Mother and Berrum together have two children; daughter J.B. born in 2004, and son E.B., born in 2013.

V.R.'s other sisters, A.M.R. and J.B. On August 11, 2008, six-year-old V.R. and her sisters stayed overnight at Berrum's apartment. The following day, V.R. reported to Mother that Berrum had touched her inappropriately. That same day, Mother went to the Fort Wayne Police Department and spoke with Officer Bobby Lemon (Officer Lemon). Mother reported that V.R. had alleged that Berrum had touched V.R.'s "cooter" with his hand. (Tr. p. 171). Mother also added that Berrum touched V.R.'s "butt with his cooter." (Tr. p. 171). Mother indicated that V.R. was dressed during the events and no penetration occurred. On August 22, 2008, with the assistance of Justin Goree (Goree), a Department of Child Services (DCS) employee, Mother agreed to a safety plan thereby restricting Berrum's unsupervised contact with V.R. On August 27, 2008, Daniel Goewert (Goewert), a child forensic interviewer of the Child Advocacy Center in Fort Wayne, conducted a forensic video interview of V.R. Goree watched the interview behind a glass screen. During the interview, V.R. repeatedly stated that Berrum touched her "cooter with his hand" and that he put his "cooter on her butt." (State's Exh. 1). Using anatomical drawings, V.R. identified the female and male genitalia as "cooter." (State's Exh. 1, Tr. p. 189). In October 2008, DCS and law enforcement closed their investigations with respect to V.R.'s sexual molestation claims.

[5] In July of 2011, Mother reconciled with Berrum. Shortly thereafter, Mother and her daughters A.M.R., J.B., and now-nine-year-old V.R., moved in with Berrum into a three-bedroom house on South Anthony in Fort Wayne. While living at the house on South Anthony, Berrum "masturbated [V.R.'s] vagina"

with his hands, over her underwear. (Tr. p. 50). Berrum also masturbated himself while touching V.R.'s vagina. Also, on more than one occasion, Berrum fondled V.R.'s bare vagina with his hand. Berrum asked V.R. several times to touch his bare penis with her hand. On several occasions, Berrum asked V.R. to put her mouth on his penis and "like suck it." (Tr. p. 54). Sometime in 2014, Berrum, V.R., and A.M.R. were watching a Netflix movie in the living room. Berrum and V.R. shared a couch and A.M.R. sat on another couch. While the movie was playing, Berrum "masturbated [V.R.'s] vagina underneath the blankets." (Tr. p. 55). On Christmas day of 2014, V.R.'s extended family was having a party at V.R.'s aunt house. At some point, V.R. was sent back to her house on South Anthony with Berrum to change her pants. After changing her pants, V.R. indicated that she met Berrum downstairs and "he kinda just like presses his penis against my butt." (Tr. p. 61). V.R. told Berrum that she did not "want to do this." and then walked to the car. (Tr. p. 61). On the drive back to V.R.'s aunt's house, Berrum talked to V.R. about how much he loved her as a daughter and that he had made a lot of sacrifices for her and the family.

[6] Sometime in 2015, V.R. and Mother were arguing, and V.R. mentioned that Berrum had touched her inappropriately. Mother expressed worry and indicated that she would talk to Berrum since "it's not a good thing" and it "shouldn't be happening." (Tr. p. 69). In April of 2015, V.R.'s family went shopping. When they got back home, V.R. went upstairs; however, she came back downstairs when she heard Berrum threaten to beat one of her sisters.

V.R. scolded Berrum, and the two began arguing. Moments later, Mother joined in the argument. In the process, referencing the sexual abuse, V.R. yelled to Mother "he's doing this to me and you don't even care because you are not doing anything about it." (Tr. p. 71). Feeling frustrated with the argument, V.R. went to the restroom and attempted to commit suicide by cutting herself. When V.R. exited the restroom, she was bleeding and she went upstairs to talk to her sister. Upon seeing the cuts, V.R.'s sister called Mother for assistance. On that same day, Mother took V.R. to the hospital. At the hospital, the nurse who attended to V.R.'s cuts questioned V.R. regarding any history of abuse. V.R. confessed that Berrum had been molesting her. For a week, V.R. stayed at the hospital, and when she was discharged, she moved in with her biological father.

[7] On October 12, 2015, the State filed an Information, charging Berrum with Count I, child molesting, a Class A felony; Count II, child molesting, a Level I felony; Count III, child molesting, a Class C felony; and Count IV, child molesting, a Level 4 felony. Shortly before Berrum's jury trial, the State amended the charging information by changing the dates of the offenses. A bifurcated jury trial was held on May10-11, 2016. During trial, Berrum moved, and the State agreed, for the dismissal of Count II, thereby leaving Counts I, III, and IV. The trial court subsequently dismissed Count II. At trial, V.R. was questioned about her first sexual abuse claim against Berrum in 2008 where she had alleged that Berrum had touched her inappropriately. V.R. indicated that she could not recall the details of the allegations she had made in 2008 despite

watching the forensic video interview a few times prior to trial. Over Berrum's objection, the trial court allowed the State to publish the videotaped forensic interview to the jury under the recorded recollection exception to the hearsay rule. At the close of the evidence, the jury found Berrum guilty on all three Counts of child molesting. On June 10, 2016, the trial court conducted Berrum's sentencing hearing. At the end of the hearing, the trial court sentenced Berrum to an executed sentence of fifty years on the Class A felony. With respect to his Class C felony, the trial court sentenced Berrum to a consecutive term of four years. Lastly, Berrum was sentenced to a concurrent executed term of six years on the Level 4 felony.

[8] Berrum now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Admission of the Evidence*

[9] A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of abuse of discretion. *Sparkman v. State*, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000). When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision. *Id*. A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. Ind. Evidence Rule 103(a). In determining whether error in the introduction of evidence affected a defendant's

substantial rights, we assess the probable impact of the evidence on the jury. *Sparkman*, 722 N.E.2d at 1262.

## II. *Recorded Recollection*

[10] Berrum now argues that he was erroneously convicted of child molesting, a Class C felony. Specifically, Berrum argues the trial court's admission of V.R.'s videotaped interview was reversible error because it did not satisfy the recorded recollection exception to the hearsay rule. Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay evidence is generally inadmissible pursuant to Indiana Evidence Rule 802. However, our evidence rules provide the following exception for admission of hearsay as a recorded recollection:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Evid. R. 803(5). This exception allows admission of a recorded statement if:

> (a) the memorandum or record relates to a matter about which a witness once had knowledge, (b) the witness has insufficient recollection at trial to enable the witness to testify fully and accurately, (c) the witness is shown to have made or adopted the memorandum or record, (d) the memorandum or record was adopted when the matter was fresh in the witness's memory, and (e) the memorandum or record is shown to reflect the witness's knowledge correctly.

*Impson v. State*, 721 N.E.2d 1275, 1282–83 (Ind. Ct. App. 2000)). "[B]efore a statement can be admitted under the recorded recollection hearsay exception, certain foundational requirements must be met, including some acknowledgment that the statement was accurate when it was made." *Ballard v. State*, 877 N.E.2d 860, 862 (Ind. Ct. App. 2007). (quotation marks omitted). A trial court should not admit a witness's statement into evidence when the witness cannot vouch for the accuracy of the statement or remember having made the statement. *Ballard*, 877 N.E.2d at 862.

[11] On appeal, Berrum claims that video interview did not reflect V.R.'s knowledge correctly, *i.e.,* V.R. could not recall the specific acts of molestations. As such, Berrum contends that V.R.'s videotaped interview should not have been admitted under Evidence Rule 805(3). In the instant case, the State sought to admit a video recording interview conducted between V.R. and Goewert, a child forensic interviewer of the Child Advocacy Center in Fort Wayne. The interview which occurred on August 27, 2008, was conducted a couple of weeks after V.R. had first disclosed that Berrum had touched her vagina with his hand. Before the trial court allowed the recording to be published to the jury, it was shown, through questioning of V.R., that the recording related to the abuse by Berrum, that the recorded interview was made when the matter was fresh in V.R.'s memory, and that V.R. was telling the truth when she spoke with Goewert. It was also shown that V.R. was about six years old when she was first interviewed, it had been it had been six years since the abuse took

place, and V.R. did not fully and accurately remember her sexual abuse claims against Berrum.

[12] Here, we conclude the videotaped interview was properly admitted under the recorded recollection exception to the hearsay rule. V.R. clearly could not recall the specific details of Berrum molesting her. However, during the interview and at trial, V.R. noted the narration of the events of 2008 were truthful. Here, we conclude that the videotaped interview pertained to a matter V.R. once knew about but could not remember well enough to accurately and fully recall at trial. *See Horton v. State*, 936 N.E.2d 1277, 1283 (Ind. Ct. App. 2010) (finding the admission of a videotaped interview under the recorded recollection exception to the hearsay rule was proper in light of the fact the child victim could not recall "some specific details" during live testimony, the victim's statements at trial were consistent with the statements made during the interview, and the victim timely adopted the statements made during the interview as accurate), *summarily aff'd on this ground*, 949 N.E.2d 346 (Ind. 2011).

## CONCLUSION

[13] Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting V.R.'s videotaped interview.

[14] Affirmed.

[15] Crone, J. and Altice, J. concur