

ATTORNEY FOR APPELLANT

Jeffery Haupt
Law Office of Jeffery Haupt
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jared J. Gorby,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 6, 2020

Court of Appeals Case No.
19A-CR-2925

Appeal from the
St. Joseph Superior Court

The Honorable
John M. Marnocha, Judge

Trial Court Cause No.
71D02-1906-F3-20

**Vaidik, Judge.**

## Case Summary

[1] Jared J. Gorby appeals his conviction for Level 3 felony child molesting. He argues that the trial court abused its discretion by allowing the video of the forensic interview of the victim to be played for the jury under Indiana Rule of

Evidence 803(5)—the "recorded recollection" exception to the rule against hearsay. We disagree and affirm.

# Facts and Procedural History

Gorby, who was born in 1999, lived with his father, his stepmother, and his brother in North Liberty until May 2017 and again from December 2018 through March 2019. His stepmother's daughter (Gorby's stepsister), Alexis Torres, lived across the street with her husband and her two children. Torres's daughter, B.B., who was born in 2014, was very close with Gorby and described him as her best friend and favorite uncle.

On May 21, 2019, B.B. told Torres that Gorby had molested her. Two days later, B.B. participated in a forensic interview at The CASIE Center in South Bend. B.B. explained that Gorby had her play the "copy game," in which they watched a video of Anna and Elsa, the princesses from the animated movie *Frozen*, and "had to copy everything that Anna and Elsa did." Tr. Vol. III p. 46. She said that, in the video, Anna and Elsa have a "peeing thing" like Gorby and they "do all this stuff." *Id.* at 50-52, 59. She explained that "Anna and Elsa puts her sister's one of that in her mouth" and that "that's the part that's bothering me because I have to do it with Jared." *Id.* at 59. When asked "Does he do anything to that part?" B.B. responded, "Yeah. He, like, puts it in my mouth." *Id.* at 63. She said, "I go down on that," which means "like, I'm falling when I come down on it . . . [b]ut I'm not. I'm just, like, leaning on it; and it kind of hurts my mouth when I do it." *Id.* at 64. She said she told Gorby to

"stop that" because it was "[h]urting my head and mouth and throat." *Id.* at 65. She talked about "pee" that is "usually white" and that "goes all the way down in my throat into my legs right here out" and "outside we have pee in our throat or mouth." *Id.* at 60.

[4] A few days later, Gorby agreed to be interviewed at the St. Joseph County Special Victims Unit. He initially denied any wrongdoing but eventually cried, said that he was a "piece of sh**," and told the detective that he had put his penis on B.B.'s lips "for two to four seconds[.]" *Id.* at 119, 130. An examination of Gorby's phone revealed a Google search for "Shadbase," an artist who "draws cartoon pornography of well-known cartoon characters." *Id.* at 124-26. One such drawing is of Anna and Elsa "with penises performing oral sex on each other." *Id.* at 126.

[5] The State charged Gorby with Level 3 felony child molesting. The case proceeded to a jury trial in October 2019. The State put B.B. on the stand and asked her if she and Gorby ever did anything that she "didn't like[.]" Tr. Vol. II p. 42. B.B. responded, "Play the copycat game." *Id.* She explained that in the copycat game "you have to copy Anna and Elsa" and that Anna and Elsa are on the screen of Gorby's tablet. *Id.* at 43. She said that Anna and Elsa were doing something that was "[n]ot okay" but repeatedly said that she did not "remember" or did not "know" exactly what it was. *Id.* at 42, 44, 45. However, she said that she remembered being interviewed at The CASIE Center and that she told the interviewer "stuff that was the truth[.]" *Id.* at 44. During a break in trial, she was shown the video of her forensic interview. Afterward, she testified

that she still did not remember what Anna and Elsa were doing or what she and Gorby did, but she said—twice—that everything she told the interviewer was "the truth." Tr. Vol. III pp. 15-16. As such, the State asked to show the jury the video of B.B.'s forensic interview under Indiana Rule of Evidence 803(5)—the "recorded recollection" exception to the rule against hearsay. Over Gorby's objection, the court allowed the video to be played.

[6] Gorby took the stand in his own defense and testified that he had never touched B.B. inappropriately. He said that when he told the detective that he put his penis on B.B.'s lips, he "really wasn't sure what was going with the interview [sic]" and had admitted to "[s]omething I didn't do." *Id.* at 175, 176.

[7] The jury found Gorby guilty as charged. The trial court imposed the advisory sentence of nine years, with five years to serve in the Department of Correction and four years suspended to probation.

[8] Gorby now appeals.

# Discussion and Decision

[9] Gorby contends that B.B.'s forensic interview was inadmissible hearsay that should not have been shown to the jury. Generally, the decision to admit or exclude evidence is committed to the sound discretion of the trial court and will be reviewed only for an abuse of that discretion. *Ballard v. State*, 877 N.E.2d 860, 861-62 (Ind. Ct. App. 2007).

[10] There is no dispute that B.B.'s statements during the forensic interview were hearsay, which is defined as "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. Ind. Evidence Rule 802. However, Evidence Rules 803 and 804 set forth numerous exceptions. Here, the trial court admitted B.B.'s interview under the "recorded recollection" exception—Evidence Rule 803(5). That rule allows the admission of "[a] record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Ind. Evidence Rule 803(5). Gorby does not dispute that the second element was satisfied, i.e., that the record (the video) was made when the events were fresh in B.B.'s memory. He challenges only the trial court's findings that the first and third elements were satisfied.[1]

[11] Regarding the first element—whether the record "is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately"—Gorby argues that at one point B.B. "seemed to indicate that this

---

[1] The State asserts that Gorby waived his argument regarding Evidence Rule 803(5) because his "objection and argument below [] specifically challenged whether admission of the evidence would violate his right of confrontation under the federal constitution." Appellee's Br. p. 12. We disagree. The hearsay issue and the confrontation issue are closely related and were addressed together, at length, by the trial court. We do note, however, that Gorby did not renew his confrontation claim on appeal. As such, we limit our discussion to Evidence Rule 803(5).

was something she simply did not want to talk about" rather than something she did not remember. Appellant's Br. p. 15. He directs us to the following exchange that B.B. had with the prosecutor after the first break in her testimony:

Q. All right, B. How are you doing?

A. Fine.

Q. Okay. Were you a little scared before?

A. (Nods head yes.)

Q. Okay. And we were talking about the copycat game. Is that something that we can talk about now?

A. (Shakes head no.)

Q. No? No? Why are you scared? Do you remember when we talked about the copycat game before?

A. (Nods head yes.)

Q. Can you tell me about the copycat game?

A. (No audible response.)

Q. What did you look at when you played the copycat game?

A. (No audible response.)

**Q. Is this something you don't want to talk about right now? Not right now?**

**A. (Shakes head no.)**

**Q. Okay.**

Tr. Vol. II pp. 48-49 (emphasis added).

[12] We first observe this was by no means a clear indication by B.B. that she was trying to avoid the details rather than struggling to remember them. When asked if the copycat game was "something you **don't** want to talk about" (emphasis added), her response was to shake her head "no." Taken literally, that was B.B. saying, "No, it's not something that I don't want to talk about." If B.B. meant to indicate that she did not want to talk about the copycat game, it would have made more sense for her to nod her head "yes" than to shake it "no."

[13] But even if we assume that shaking her head "no" was B.B.'s way of indicating that she did not want to talk about the copycat game, that must be weighed against all the times she said she did not "remember" or did not "know" what the game entailed. *See* Tr. Vol. II pp. 42, 44, 45; Tr. Vol. III pp. 15, 16. To the extent B.B. gave conflicting answers, it was up to the trial court to decide whether B.B. couldn't remember the events or simply did not want to talk about them. *See* Ind. Evidence Rule 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible."). The trial court—after

seeing and hearing B.B. testify—concluded that she could not remember the events and that Evidence 803(5)(A) was therefore satisfied. We will not second guess that conclusion.[2]

[14] As for the third element of Rule 803(5)—whether the record "accurately reflects the witness's knowledge"—Gorby cites the principle that a trial court should not admit a statement under the rule "when the witness cannot vouch for the accuracy of the statement nor remember having made the statement." *Ballard*, 877 N.E.2d at 862. Gorby notes that B.B., during the following exchange with the prosecutor, denied having talked about certain things during her forensic interview:

> Q. Do you remember having an interview with a lady at the CASIE Center at the place with all the toys?
>
> A. Yeah.
>
> Q. Yeah. And did you talk to her about the copycat game?
>
> A. No.

---

[2] The State cites *Impson v. State*, 721 N.E.2d 1275, 1283 (Ind. Ct. App. 2000), where a panel of this Court stated that insufficient memory can be found even when a reluctant witness falsely claims lack of memory to avoid answering a question. The panel cited the 1995 edition of Indiana Practice, which in turn cited the 1992 edition of McCormick on Evidence. To the extent McCormick at one time supported that proposition, it no longer does. The current edition of McCormick notes that two courts (the Sixth Circuit in 1978 and the Pennsylvania Supreme Court in 1981) have held that reluctance to testify can satisfy the insufficient-memory requirement, but it is otherwise skeptical of the proposition. 2 McCormick on Evidence § 282 (8th ed. 2020). We share that skepticism. Reluctance to answer a question simply is not the same as lack of memory, which is what Evidence Rule 803(5)(A) expressly requires.

Q. No?

A. No.

Q. Did you tell her stuff that happened?

A. No.

Q. No?

A. No.

Tr. Vol. II p. 44. At other points, however, B.B. testified that everything she told the interviewer—including the details of the copycat game—was the truth. *See id.*; Tr. Vol. III pp. 15, 16, 22. Again, it was the trial court's task to weigh that testimony against B.B.'s denials. *See* Evid. R. 104(a). Having done so, the court concluded that B.B. had adequately vouched for the accuracy of the statements she made during the interview and that Evidence Rule 803(5)(C) was therefore satisfied. We will not disturb that decision.

[15] The trial court did not abuse its discretion by admitting B.B.'s forensic interview into evidence under Evidence Rule 803(5).

[16] Affirmed.

May, J., and Robb, J., concur.