**Derrick WILLIAMS, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 49S00–9708–CR–00453.

Supreme Court of Indiana.

Oct. 26, 1998.

Walter E. Bravard, Jr., Appellate Public Defender, Indianapolis, for Defendant–Appellant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, for Plaintiff–Appellee.

DICKSON, Justice.

The defendant, Derrick Williams, appeals his convictions for murder[1] and carrying a handgun without a license.[2] In this direct appeal, he claims three errors: (1) the discriminatory use of peremptory juror strikes; (2) insufficient evidence to convict; and (3) an erroneous jury instruction. We affirm.

■ The defendant first contends that the State exercised racially discriminatory peremptory strikes of potential jury members. Peremptory strikes are improper when used to exclude potential jurors from serving solely because of race. *Lee v. State*, 689 N.E.2d 435, 440 (Ind.1997) (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Williams v. State*, 669 N.E.2d 1372 (Ind.1996)). To establish a prima facie case of racial discrimination in the use of peremptory challenges, a defendant must first show the trial court: (1) that the prosecutor used peremptory strikes to remove members of a cognizable racial group from the jury pool; and (2) that the facts and circumstances raise an inference that the prosecutor used those strikes to exclude potential jury members from the jury because of their race. *Id.* Once the defendant establishes a prima facie case, the burden of production shifts to the State to tender a race-neutral explanation. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995). The trial court must then decide whether the defendant, as the opponent of the strike, has proved purposeful racial discrimination. *Id.* at 767, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. The issue is "the facial validity of the prosecutor's explanation," *id.*, and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* However, the "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* We will uphold the trial court's decision on the matter of discriminatory intent unless the decision is clearly erroneous. *Kent v. State*, 675 N.E.2d 332, 340 (Ind.1996); *Lee*, 689 N.E.2d at 441.

■ The Record of Proceedings does not contain a transcript of the jury selection process. However, it does reflect that, before the jury was sworn, the trial court stated "after round one ... the defense preserved its right to make a *Batson* challenge at that time and I want to afford them the opportunity to do that." Record at 134. The defense then noted that the State had stricken four African–American persons and stated, "I would submit the State has created a pattern under *Batson* and would move for sanctions as appropriate by the Court." Record at 135. The State responded that "[t]here's not been established a pattern," noted that several African–American jurors were not struck, and presented its reasons for each of the challenged peremptory strikes. Record at 136–38. The prosecutor explained that she struck one juror because he was unsure that he could trust a police officer or the State, he was falling asleep, and he said that he could not sit in judgment. She struck another juror who expressed a hesitation to find anyone guilty. A third juror was struck because she had trouble making decisions and was biased against finding young black men guilty. The fourth juror was struck because the prosecutor believed he would require a higher burden of proof than beyond a reasonable doubt. Judge Magnus–Stinson then ruled:

For the record, the Court indicated at the close of round one, considering that as of

---

1. IND.CODE § 35–42–1–1 (1993).

2. IND.CODE § 35–47–2–1 (1993).

the close of that round, juror number four, Mr. Toler, and juror number ten, Mr. Ogunani, remained on the jury. The Court did not find a systematic pattern of exclusion. And the Court also discerns some of the reasons that were articulated by the State with respect to jurors, then seated jurors one, two and three, Kelly, Shipp and Taylor, and the Court indicated to counsel for the defense at that time that it was going to deny their *Batson* challenge. As to Mr. Parson, the Court finds that the State has stated a race neutral reason and the Court denies the challenge for that reason as well.

Record at 138.

From this explanation, we understand the trial judge to be rejecting the defendant's claim that the State's peremptory strikes had created a pattern of discrimination, and further to be discerning and accepting the State's proffer of race-neutral reasons. On appeal, the defendant acknowledges that a trial court determination regarding whether there was purposeful racial discrimination in jury selection will be given great deference, but argues that "[s]urely the law demands more than merely allowing the prosecutor to make up some good sounding reasons to cover up the true intention of striking jurors to implement racial and social discrimination." Brief of Appellant at 12. However, he fails to establish that the trial court's decision was clearly erroneous. His claim on this issue fails.

■■■ Second, the defendant contends that the evidence was insufficient to convict him for murder and carrying a handgun without a license. An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State,* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. The defendant claims that "the State's only evidence was based on [a witness's] testimony." Brief of Appellant at 13. However, we have stated that a conviction can be supported on the testimony of a single witness. *Wray v. State,* 547 N.E.2d 1062, 1068 (Ind.1989); *Hill v. State,* 517 N.E.2d 784, 787 (Ind.1988).

■■■ The crime of murder is established by proof that the defendant knowingly or intentionally killed another human being. IND.CODE § 35–42–1–1 (1993). The intent to commit murder can be inferred from the use of a deadly weapon in a manner likely to cause death or serious injury. *Torres v. State,* 673 N.E.2d 472, 473 (Ind.1996). The crime of carrying a handgun without a license is established by proof that the defendant carried a handgun outside of his own dwelling or business. IND.CODE § 35–47–2–1 (1993).

Here the evidence most favorable to the judgment reveals the following. Aaron Chandler ("Chandler") testified that he was in a car which his cousin, Gregory Chandler ("the victim"), was driving. While stopped at a stop light, with the windows rolled down, Chandler heard and then saw a car pull up beside their car. The defendant, whom Chandler identified in court, leaned out of the passenger side door and fired approximately five or six shots from a revolver across the hood of the car. After the shooting, in which Chandler was not injured, he turned to see blood coming from the victim's neck and chest area. The victim died from the gunshot wounds.

The evidence clearly establishes that the defendant committed murder by knowingly using a deadly weapon in a manner likely to kill and that the victim's death resulted from the defendant's actions. The evidence also proved that the defendant possessed a handgun outside his dwelling or business, as he possessed the gun on a public street. The defendant presented no evidence that he possessed a valid license, and, thus, the evidence was sufficient to sustain a conviction for carrying a handgun without a license.

■■■ Third, the defendant alleges error because the trial court failed to instruct the jury that the State must prove a specific intent to kill to establish a murder. To determine whether the trial court erred in

refusing to give an instruction, we consider: (1) whether the tendered instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the tendered instruction. *Griffin v. State,* 644 N.E.2d 561, 562 (Ind. 1994).

Here the defendant's claim fails on the first prong. The cases he cites discuss the law concerning the offense of attempted murder, not murder. We have held that, in attempted murder cases, the State must prove a specific intent to kill and that the jury must be so instructed. *See, e.g., Greer v. State,* 643 N.E.2d 324, 326 (Ind.1994); *Taylor v. State,* 616 N.E.2d 748, 748 (Ind. 1993); *Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991). However, in murder cases the defendant may be convicted upon a showing of *either* an intentional or knowing killing. IND.CODE § 35–42–1–1 (1993). We reject the defendant's contention on this issue.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.