Gregory DICKENS, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–9911–CR–00646.

Supreme Court of Indiana.

Aug. 28, 2001.

Philip R. Skodinski, South Bend, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Gregory Dickens appeals his conviction for murder and sentence of life without parole for shooting a police officer. He presents six issues:

I. Whether admitting evidence that he possessed a handgun two days before the crime violated Rule 404(b);

II. Whether he was forced to testify in violation of his Fifth Amendment rights when the trial court restricted evidence about another suspect;

III. Whether the admission of a photograph of him was unfairly prejudicial;

IV. Whether the trial court improperly allowed opinion testimony;

V. Whether statements of identification retold by the police constituted improper hearsay; and

VI. Whether the State's peremptory strikes against African–Americans were racially motivated in violation of Dickens' Equal Protection rights.

### Facts and Procedural History

On August 24, 1997, sixteen-year-old Dickens was riding bikes with Quinton Price, known as "Paulie." While patrolling the area, Officer Scott Hanley advised Corporal Paul Deguch by radio that Dickens was riding a valuable bicycle that he suspected was stolen. Later on that evening, Deguch spotted Dickens and Paulie and approached them in his patrol car. Paulie rode off, while Dickens rode up to the nearest house, 1024 Talbot Street,·

alighted from the bike, and went up on the porch. Deguch shined his spotlight onto the porch, exited his car, and followed Dickens onto the porch as Dickens was knocking on the door. Dickens shot Corporal Deguch in his head and shoulder and killed him.

The State charged Dickens with murder and sought the death penalty because the victim was a law enforcement officer. A jury found Dickens guilty, and recommended life imprisonment without parole, which the trial court imposed.

## I. Evidence of Handgun Possession

Dickens argues that the testimony that he possessed a gun two days before the shooting violated the prohibition in Rule 404(b)[1] against evidence of prior bad acts. He contends that no exception applies and that evidence of a propensity to carry a gun is unfairly prejudicial.

■ Rule 404(b) protects against conviction based on past actions (the "so called 'forbidden inference,'" *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind.1997)), rather than facts relevant to the matter at issue. While prior acts are not permissible to show propensity, they may be allowed for other purposes. Rule 404(b) lists some other purposes, but this list is illustrative only. *Hardin v. State*, 611 N.E.2d 123, 129 (Ind.1993). In fact, "extrinsic act evidence may be admitted for any purpose not specified in Rule 404(b) unless precluded by the first sentence of Rule 404(b) or any other Rule." *Thompson v. State*, 690 N.E.2d 224, 233 (Ind. 1997) (citing *Hardin*, 611 N.E.2d at 129; *see generally* 12 Robert Lowell Miller Jr.,

Indiana Evidence § 404.235 (2d ed. 1995 & Supp.2000).

■ When evidence is challenged under Rule 404(b), the trial court should determine: (1) whether the evidence is relevant to a matter at issue rather than just the defendant's propensity to commit the crime and (2) whether the probative value outweighs the prejudicial effect. *Hicks*, 690 N.E.2d at 221. We review the trial court ruling for an abuse of discretion. *Id.* at 223.

■ Here, the evidence that Dickens was seen carrying a gun on his person just two days before the shooting was relevant. The shooting took place on an empty porch where Dickens was unlikely to have found a gun. Dickens' recent act of carrying a gun therefore goes to opportunity. The trial court did not err in concluding that the probative value of this evidence outweighed its prejudicial effect.

## II. Evidence of Another Suspect

The trial court granted the State's motion in limine to restrict the defense from introducing evidence of another suspect, Shawn Bailey, without first presenting direct evidence.[2]

Despite the ruling, defense counsel sought to cross-examine an investigating officer about another suspect during the State's case-in-chief. The court sustained an objection. The defense later put Dickens on the stand, and he testified that Shawn Bailey was the shooter. Dickens claims that the trial court's rulings im-

---

1. Indiana Evidence Rule 404(b) states,
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowl-

edge, identity, or absence of mistake or accident....

2. The court recognized that Dickens' own testimony would create direct evidence. (R. at 2825.)

pinged on his Fifth Amendment right to not testify.[3]

Evidence which tends to show that someone else committed the crime makes it less probable that the defendant committed the crime and is therefore relevant under Rule 401. *Joyner v. State*, 678 N.E.2d 386, 389 (Ind.1997). We review admissibility determinations for an abuse of discretion. *Id.* at 390.

In *Joyner*, the evidence regarding the other suspect included a hair sample and testimony from witnesses that placed the murder victim and defendant alive and in different places after the alleged crime. *Id.* at 389. Here, the evidence regarding Shawn Bailey is far more tenuous.[4] Dickens claims this evidence indicates that two people were on the porch that night (i.e. himself and Shawn Bailey). (Appellant's Br. at 19.) Furthermore, the police initially considered Bailey a suspect (R. at 3432–33), although they did not have any actual evidence that Bailey was the shooter.

The trial court was warranted in concluding that these facts do not make it less probable that Dickens committed the crime. Under the *Joyner* analysis, the evidence was properly kept out until after the State's case-in-chief.

Likewise, the trial court did not violate Dickens' Fifth Amendment rights when it decided that if Dickens had evidence of Bailey's involvement he should provide it himself. The defense chose to bring out the information regarding Bailey as a suspect during its own case-in-chief through testimony of officers as well as from Dickens. We think the defendant's decision to testify and attempt to cast Shawn Bailey as the shooter was not "compelled" within the meaning of the Fifth Amendment.

### III. Photograph Claim Waived

Dickens claims the trial court erred in admitting a photograph of Dickens and a friend making alleged gang signs, stating that it was unfairly prejudicial. (Appellant's Br. at 20; R. at 3919 (State's Exh. 64A).) Dickens' attorney objected to the photograph as duplicative, without any mention of unfair prejudice. (R. at 2919.) "A party may not object on one ground at trial and raise a different ground on appeal." *Brown v. State*, 728 N.E.2d 876, 878 (Ind.2000). This issue is waived.

### IV. Opinion Testimony

Dickens claims that the court erred in permitting Detective Michael Samp to give an opinion about which witnesses were in a better position to observe the crime. Indiana Evidence Rule 701(a) requires that opinion testimony of a lay witness[5] be "rationally based on [his] perception," meaning "simply that the opinion must be one that a reasonable person normally could form from the perceived facts." *O'Neal v. State*, 716 N.E.2d 82, 89 (Ind.Ct.App.1999) (citing 13B Robert Lowell Miller, Jr., Indiana Evidence 196 (1996)).

Detective Samp was present at the crime scene following the shooting.

---

3. Dickens also claimed the trial court denied him his Sixth Amendment right to confront and cross-examine witnesses by granting the motion in limine. (Appellant's Br. at 18.) However, Dickens fails to develop this argument. Under Ind. Appellate Rule 8.3(A)(7), this claim is waived.

4. Two witnesses saw Dickens fleeing in one direction, a third witness claimed that Dickens ran the opposite direction. (R. at 3442–43.)

5. Detective Samp was not qualified as an expert witness. (Appellant's Br. at 21.)

He later learned of the locations of the neighbors who witnessed the shooting. The detective's first-hand familiarity with the crime scene as well as his knowledge concerning the location of the witnesses make his opinion "rationally based on [his] perception." Evid. R. 701(a).

For that matter, the witnesses themselves all testified as to their location. If there was any error in allowing Detective Samp's opinion, it was harmless, because the jury had sufficient information to determine independently who had the best view of the crime.

### V. Hearsay Claim

Dickens urges that witnesses' statements of identification presented by police officers and on videotape were inadmissible hearsay. (Appellant's Br. at 22.) The State points out that some statements of identification are not hearsay, by definition. Ind. Evid. R. 801(d). Statements of identification are not hearsay if they are made shortly after perceiving the person,[6] and the declarant is available for cross-examination concerning the statement at trial. *Id.* at 801(d)(1)(C); *see also Gates v. State,* 702 N.E.2d 1076, 1077 (Ind.1998); *Robinson v. State,* 682 N.E.2d 806, 810 (Ind.Ct.App.1997). Here, all the statements qualified as statements of identification and all the declarants were available at trial for cross-examination. The statements therefore are not hearsay.

### VI. Discriminatory Juror Strikes

There were no African–Americans on Dickens' jury. During jury selection, the State used two peremptory strikes against African–Americans. Another African–American was dismissed for cause at the defense's request. A fourth African–American served as the first alternate juror.

Dickens challenges the State's two peremptory strikes as being racially motivated. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). "Peremptory strikes are improper when used to exclude potential jurors from serving solely because of race." *Williams v. State,* 700 N.E.2d 784, 786 (Ind.1998). Such claims are analyzed like this:

> To establish a prima facie case of racial discrimination in the use of peremptory challenges, a defendant must first show the trial court: (1) that the prosecutor used peremptory strikes to remove members of a cognizable racial group from the jury pool; and (2) that the facts and circumstances raise an inference that the prosecutor used those strikes to exclude potential jury members from the jury because of their race. Once the defendant establishes a prima facie case, the burden of production shifts to the State to tender a race-neutral explanation.

*Id.* (citations omitted).

During jury selection, Dickens first challenged the prosecutor's peremptory strike of Ms. Dixon. The prosecutor disagreed that he needed to state racially-neutral reasons for the strike before Dickens established a prima facie case. Nonetheless, he explained that he was concerned about Dixon's ability to follow the law concerning the death penalty[7] and her ability to understand technical evidence.[8]

---

**6.** "[T]he term 'shortly' is relative rather than precise;" the purpose of the rule is assuring reliability. *Robinson,* 682 N.E.2d at 811.

**7.** Ms. Dixon said that it would be difficult for her to choose the death penalty and that she would have to pray to God to do it. (R. at 2294.)

**8.** Ms. Dixon failed to complete her questionnaire completely and made a spelling error. (R. at 2294.)

The second challenged strike was of Mr. Warburton–Brown. The prosecutor explained that Warburton–Brown knew a police officer who was a witness; that his license had been suspended because of a false driver's application; that he had a record of charges for unlawful use of a weapon and deceptive practices; and that he did volunteer work by giving legal, economic, and social advice to youth.[9] The prosecutor also stated a vague concern regarding Warburton–Brown's involvement with international studies and Amnesty International's position against the death penalty. The prosecutor later also said the State was concerned that Warburton–Brown had expressed that he felt the judicial system was unfair towards economically disadvantaged individuals.

Dickens challenges the validity of these reasons at some length. (Appellant's Br. at 26–31.)[10] "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Williams,* 700 N.E.2d at 786 (quoting *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). The trial court found the reasons to be sufficiently race neutral. "We will uphold the trial court's decision on the matter of discriminatory intent unless the decision is clearly erroneous." *Williams,* 700 N.E.2d at 786 (citing *Kent v. State,* 675 N.E.2d 332, 340 (Ind.1996); *Lee v. State,* 689 N.E.2d 435, 441 (Ind. 1997)). We find no clear error.

**Conclusion**

We affirm.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

9. The prosecutor was concerned that Warburton–Brown would be a "street lawyer" back in the jury room. Additionally he was concerned that he assists youth similar in age to Dickens. (R. at 2365–66.)

10. At trial, Dickens' lawyer suggested that the State ran only selective background checks aimed at black members of the venire, (Supp. R. at 42), but he did not offer evidence to support that contention and does not raise it on appeal.