**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before and court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 17 2012, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID K. PAYNE**
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH KEEHN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 46A05-1106-CR-332 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAPORTE CIRCUIT COURT
The Honorable Thomas J. Alevizos, Judge
Cause Nos. 46C01-1007-FA-345

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a jury trial, Kenneth Keehn appeals his conviction for dealing in a Schedule I controlled substance,[1] as a Class A felony. He raises the following two restated issues:

I.  Whether the trial court erred when it admitted into evidence a redacted version of Keehn's custodial interview with law enforcement; and

II. Whether the trial court's admonishment to the jury concerning Indiana Evidence Rule 404(b) evidence was improper.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 3:00 p.m. on March 3, 2010, a confidential informant ("CI") met with officers of the LaPorte County Sheriff's Department concerning a potential purchase of heroin at Country Acres Apartments, which is a "government subsidized" family housing complex. *Tr.* at 219-21. The CI made a phone call to Keehn to arrange the purchase. Detective Nathan Battleday and another detective then placed video and audio recording equipment on the CI's clothing, drove him to a location a few blocks from Country Acres Apartments, and provided him with buy money that had been photocopied for identification purposes. The CI walked to the apartment complex, entered the designated building, and encountered Keehn's wife in a hallway. When the CI entered the apartment, Keehn asked the CI "how many" he wanted, and the CI replied "three." *Tr.* at 161, 163, 167. Keehn asked the CI if he "wanted them to go." *Id*. at 163. The CI placed the money on the table, and Keehn's wife counted it and handed it to Keehn, who packaged the heroin in foil and handed it to the

---

[1] *See* Ind. Code § 35-48-4-2.

2

CI.  The CI then returned to the officers' vehicle with rolled-up foil containing what was later determined to be .17 grams of heroin.

On July 9, 2010, the State charged Keehn with dealing in a Schedule I controlled substance, as a Class A felony.  Executing an arrest warrant, police arrested Keehn and his wife on July 15, 2010 and transported them to the LaPorte County Jail.  The next morning at approximately 9:40 a.m., Keehn was moved to an interview room, where he met with Detective Brett Swanson.  Detective Swanson provided Keehn with an advisement of rights form that listed each of his *Miranda* rights.  Before beginning any interview questions, Detective Swanson read through the rights.  Specifically, after reading each right, Detective Swanson would wait for Keehn to initial the provision indicating his waiver of that right before Detective Swanson proceeded on to the next provision.  Detective Swanson read the following final provision:

> I have read this statement of my rights and I understand what my rights are.  I am willing to make a statement and answer questions.  I do not want a lawyer at this time.  I understand and know what I am doing.  No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

*Tr.* at 238.  Detective Swanson said, "If you agree to that statement, sign here for me," to which Keehn replied, "No I don't.  I don't understand." *Id.*  Keehn inquired, "So how do I, I just go to the next one then?" *Id.*  Detective Swanson explained, "No, we'll take you back upstairs." *Id.*  Then, a discussion between the two occurred where Keehn expressed confusion as to why he was being questioned and about what.  Detective Swanson clarified, "What I want to do is talk to you about the charges that you are being charged with." *Id.* at

3

238-39. Keehn inquired, "Nothing else?" *Id*. at 239. Detective Swanson confirmed that he only wanted to talk to Keehn about what was found in the apartment and the associated charge of dealing, then asked Keehn, "So you want to talk to me?" and Keehn replied, "Why not?" *Id*. Detective Swanson reminded Keehn that if he did not want to answer questions, they could skip them or stop the interview. Keehn then signed the waiver form, and the interview proceeded.

Prior to trial, Keehn filed a motion to suppress all oral, written, taped or transcribed statements by Keehn to law enforcement, and the court held a hearing at which time Keehn argued he was too intoxicated during the interview to validly waive his rights. After receiving testimony and watching a video of the interview, the trial court determined that Keehn was lucid, coherent, and "immediate in his answers," and it denied Keehn's motion to suppress. *Id*. at 255.

Also prior to trial, Keehn filed a motion in limine, which alleged that Keehn's statement to police contained references to other crimes, either uncharged or charged in another matter, and that the State should be precluded from admitting such evidence to show that Keehn acted in conformity therewith as provided by Indiana Rule of Evidence 404(b). The trial court denied the motion but agreed to consider giving an admonishment or limiting instruction to the jury at the relevant time during trial. *Id*. 55, 64.

At trial, a redacted version of Keehn's interview with Detective Swanson was read into evidence by live witnesses, over Keehn's continuing objection. Thereafter, the trial court read the following to the jury:

4

> The prior statement in the, in the instances where it refers to other crimes, or wrongs, evidence of other crimes, wrongs, or acts are not admissible to prove the character of a person in order to show action in conformity therewith. However, it may however be admissible for other purposes, such as proof of motive, intent, et cetera.

*Id*. at 258.

Keehn was convicted as charged. He now appeals.

## DISCUSSION AND DECISION

### I.      Admission of Keehn's Statement to Police

Keehn filed a motion to suppress his statement to Detective Swanson, and after the denial of that motion, he proceeded to trial; therefore, as Keehn correctly argues in his brief, the claim on appeal is whether the trial court abused its discretion in admitting the evidence. *Chiszar v. State*, 936 N.E.2d 816, 819 (Ind. Ct. App. 2010), *trans. denied* (2011). An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. In reviewing the trial court's ultimate ruling on admissibility, we may consider the foundational evidence from the trial as well as evidence from the motion to suppress hearing that is not in direct conflict with the trial testimony. *Id*.

At the motion to suppress hearing, Keehn's argument was that he was intoxicated or still under the influence of heroin at the time he gave his statement, and thus any waiver of rights was not voluntarily made. After viewing the DVD with audio and visual of the interview and receiving the testimony of Detective Swanson, the trial court denied his motion to suppress, finding that Keehn was lucid and coherent and therefore able to, and did, voluntarily waive his *Miranda* rights. At trial, Keehn renewed his objection to the taped

interview being played for the jury and lodged a continuing objection to its admission. *Tr.* at 227. Ultimately, a redacted version of the statement was read to the jury by witnesses during trial.[2]

On appeal, Keehn argues that it was error to admit his statement to police because during the interview he had communicated to Detective Swanson that he did not understand his *Miranda* rights and, consequently, did not knowingly waive them. The State urges us to find that because Keehn asserted one basis for the statement's exclusion at the hearing on the motion to suppress and at trial, and asserts another now, he has waived the issue. *Appellee's Br.* at 11. We agree. A defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Abran v. State*, 825 N.E.2d 384, 389 (Ind. Ct. App. 2005) (claim waived where at motion to suppress hearing and at trial defendant claimed vehicle search violated department written procedure, but on appeal claimed the inventory search was pretextual and unlawful under the Fourth Amendment). Here, at the pre-trial motion to suppress hearing, Keehn argued that at the time of the interview he was still under the influence of heroin and voluntarily intoxicated, such that his waiver of his *Miranda* rights was not valid. At trial, he renewed his objection to the statement, generally referring to his motion to suppress. *Tr.* at 227. Although Keehn's motion to suppress alleged a number of arguments as to why the taped statement to police should be suppressed, at the suppression

---

[2] The parties agreed to this procedure, rather than playing the DVD video recording or admitting a written transcript, in order to limit inadmissible Evidence Rule 404(b) evidence coming before the jury.

6

hearing Keehn argued only that his waiver was not valid because he was intoxicated. Indeed, Keehn's counsel cross-examined Detective Swanson with questions such as how many hours passed between arrest and interview, whether Keehn was tested for drugs, and whether Detective Swanson perceived Keehn to be under the influence. The trial court based its denial of Keehn's motion on the fact that he failed to show impairment and that his statement was involuntary. At trial, Keehn renewed his objection generally, but did not assert any other basis making his statement involuntary, and he did not cross-examine Detective Swanson. Accordingly, he did not raise at trial, as he does now, that he failed to understand the rights he was waiving. On these facts, Keehn has waived his argument that he expressed a lack of understanding to Detective Swanson and, therefore, did not validly waive his *Miranda* rights, making his statement involuntary and inadmissible. Waiver notwithstanding, we address the issue on its merits.

*Miranda* requires that a person must be warned of the right to remain silent, or to discontinue answering questions at any time, that his answers may be used against him, and that he has the right to the presence of an attorney, either retained or appointed. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Several means of sufficiently informing an individual are commonly employed by law enforcement, such as a two-way discussion between law enforcement and the accused regarding the *Miranda* rights, an oral recitation or reading of the rights to the accused followed by directly questioning whether the accused understands these rights, provision of an advisement of rights form read aloud by the accused before it is signed, or any combination of these. *State v. Keller*, 845 N.E.2d 154, 162 (Ind. Ct. App.

7

2006). Because there is no formal requirement for how the State must meet its burden of advising an individual consistent with *Miranda,* this court examines the issue in light of the totality of the circumstances. *Id*. at 161 (citing *Wessling v. State*, 798 N.E.2d 929, 936 (Ind. Ct. App. 2003)). A waiver of *Miranda* rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. *Ringo v. State,* 736 N.E.2d 1209, 1211–12 (Ind. 2000). The admissibility of a statement is controlled by determining from the totality of the circumstances whether it was made voluntarily and not induced by violence, threats, or other improper influences that overcame the defendant's free will. *Treadway v. State*, 924 N.E.2d 621, 635 (Ind. 2010).

Here, in arguing on appeal that he did not make a knowing and intelligent waiver of his *Miranda* rights, Keehn relies on the statement he made to Detective Swanson that expressed a lack of understanding or some confusion. Specifically, after Keehn had read and initialed the separate provisions, Detective Swanson read the following:

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

*Supp. State's Ex.* 2. Detective Swanson said, "If you agree to that statement, sign here for me," to which Keehn replied, "No I don't. I don't understand." *Tr*. at 238. Keehn then inquired whether he should continue "to the next one," and Detective Swanson advised Keehn that, no, he should not proceed and that he would "take [Keehn] back upstairs." *Id*.

8

However, Keehn did not express a desire to stop the interview, but rather communicated that he was "confused what was going on there," to which Detective Swanson responded with clarification to Keehn that he was going to ask Keehn questions about only the dealing charge and the items found in the apartment, and "nothing else." *Id*. at 239. Keehn then elected to proceed, signed the form, and Detective Swanson began his questioning.

Keehn urges us to find that these facts are akin to those found in *Keller*, where the trial court suppressed Keller's statement to police, and we affirmed his interlocutory appeal. There, Keller was arrested and taken to police headquarters where he was interviewed by two officers. At the beginning, one officer "slid" an advice of rights form in front of Keller, told him to read it, and "initial each one of those that you understand." *Keller*, 845 N.E.2d at 158. The videotape showed that Keller glanced at it and signed it. One officer asked Keller if he understood the form, "but it [was] unclear whether Keller respond[ed]." *Id*. at 159. Keller briefly reviewed the form's statements and wrote his initials beside each one. Upon completion of the form, he was questioned and made incriminating statements.

At the *Keller* suppression hearing, the trial court observed that Keller immediately began to initial the form and did not take any time to read through the document, noting: "There is no colloquy, whatsoever, to ensure ... that [Keller] understood his rights, first of all, and no evidence, whatsoever, to show that the defendant voluntarily waived them." *Id*. at 161. In Keller's ensuing interlocutory appeal, we noted that "[T]he threshold questions are whether Keller was adequately advised of his constitutional rights by [the detectives], and whether they insured that Keller understood those rights prior to waiving them." *Id*.

9

Ultimately, this court found that the facts before it were not sufficient to infer a knowing and intelligent waiver by Keller. *Id*. at 164.

We find the facts of *Keller* distinguishable from those before us. In contrast to *Keller*, where the officer did not orally advise the defendant of each right contained on the form, Detective Swanson read individually each *Miranda* right to Keehn, waited for him to initial the provision, and then moved on to reading the next right to him. Detective Swanson did not proceed until Keehn had initialed the provision, thereby signaling his understanding of that right. We find that the context and placement of Keehn's "I don't understand" remark reflected confusion about *why* he was being questioned and about *what*, as opposed to indicating a lack of understanding of his *Miranda* rights. Furthermore, after Keehn signed the form, Detective Swanson verbally reiterated that the questioning could be stopped at any time if Keehn chose to do that. We find that, here, the State carried its burden to demonstrate that Keehn was fully advised of his rights and voluntarily waived them. The trial court did not abuse its discretion by admitting Keehn's statement at trial.

## II. Indiana Evidence Rule 404(b) Admonishment

Keehn opposed the admission of his statement to police into evidence – not only for the reasons discussed above concerning the voluntariness of his *Miranda* waiver – but also because the statement to police contained references to uncharged bad acts occurring prior to March 3, 2010, the date when the CI purchased heroin from Keehn at the apartment. To that end, Keehn filed a motion in limine. The trial court denied the motion, intending to allow at least a redacted version of the statement into evidence, but it agreed to consider giving a

10

limiting instruction or admonishment[3] to the jury at the relevant time during trial. *Tr*. 55, 64.

When during trial it became clear that the trial court was going to permit the State to read a redacted version of the taped transcript into evidence, Keehn posed his continuing objection as advanced in his motion in limine. *Id*. at 232.

After the redacted transcript was read into evidence, the trial court, read the following to the jury:

> The prior statement in the, in the instances where it refers to other crimes, or wrongs, evidence of other crimes, wrongs, or acts are not admissible to prove the character of a person in order to show action in conformity therewith. However, it may however be admissible for other purposes, such as proof of motive, intent, et cetera.

*Id*. at 258.

On appeal, Keehn asserts that the admonishment was insufficient to have cured the prejudicial impact of the prior bad act evidence. However, Keehn did not object to the trial court's admonishment, assert any challenge to its adequacy, or move for a mistrial. Therefore, he has failed to preserve the issue on appeal. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006) (party not satisfied with admonishment after alleged improper argument should move for mistrial and failure to do so results in waiver); *Hall v. State*, 634 N.E.2d 837, 841 (Ind. Ct. App. 1994) (defendant acquiesced in overnight jury separation when he indicated satisfaction with trial court's admonishment to jury). Regardless of Keehn's failure

---

[3] Indiana Evidence Rule 105 provides: When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly.

to preserve the issue, we discern no error.

Indiana Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Keehn's argument appears to be that the trial court's admonishment was not an accurate statement because it gave the jury "more latitude and discretion than that which is provided in Rule 404(b)." *Appellant's Br*. at 11. He argues that because the admonishment uses the words "et cetera," it was essentially an invitation for the jury to use the evidence "as proof of almost anything it saw fit." *Id.* We are not persuaded.

First, the trial court's admonishment expressly stated that any prior bad acts that might have been mentioned in the police interview could not be used to prove that Keehn acted in conformity therewith and committed the current offense on the date in question. Second, Rule 404(b) states that while prior bad acts may not be used to show propensity to commit the crime charged, they may be allowed for other purposes, *such as* proof of motive, intent, and plan. By its language, Rule 404(b) provides a non-exclusive list of permissible purposes. *Dickens v. State*, 754 N.E.2d 1, 4 (Ind. 2001) (Rule's list is illustrative only). The trial court's use of "et cetera" does not run afoul of Rule 404(b) parameters.

12

Our review of the record before us reveals that, upon the denial of Keehn's motion in limine, the trial court offered to read a limiting instruction to the jury at the appropriate time during the evidence. *Tr.* at 55-56, 64. During trial, the trial court asked defense counsel about the desired wording of the limiting admonishment, requesting Keehn's counsel to provide it to the court. *Id.* at 233-34. The record before us suggests that the trial court read verbatim that which Keehn's counsel provided. *Id.* at 258. No objection was made, and the admonishment was in line with Evidence Rule 404(b). Accordingly, we find no trial court error in the admonishment that was read to the jury following the admission into evidence of Keehn's redacted statement to Detective Swanson.

Affirmed.

BARNES, J., and BRADFORD, J., concur.