## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 22 2017, 6:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christian James Cain,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 22, 2017

Court of Appeals Case No.
49A02-1611-CR-2562

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1601-MR-3840

**Bailey, Judge.**

# Case Summary

[1] Christian James Cain ("Cain") appeals his convictions for Murder, a felony,[1] and Possession of a Handgun by a Serious Violent Felon, a Level 4 felony.[2] We affirm.

# Issues

[2] Cain presents three issues for review:

    I.      Whether the trial court abused its discretion in the admission of evidence;

    II.    Whether the convictions are supported by sufficient evidence; and

    III.   Whether Cain was properly sentenced.

# Facts and Procedural History

[3] In 2014, twenty-year-old Ariana Cheeks ("Cheeks") was romantically involved with Cain's brother, Cory Cain ("Cory"). In April of 2014, Cain's mother, Vivian Cain ("Vivian"), filed a police report accusing Cheeks of stealing her

---

[1] Ind. Code § 35-42-1-1.

[2] I. C. § 35-47-4-5.

bank card and withdrawing money from her account. At the time of the alleged theft, Cain was incarcerated. He was released to parole in October of 2014.

[4] During the evening of December 11, 2014, Cain visited a friend, Monterio Mack ("Mack"). Cain angrily claimed "the bitch took his momma's credit card with some money on it." (Tr. Vol. II pg. 112.)

[5] The following day, at around 6:00 p.m., Cheeks and her brother Daniel Baxter ("Baxter") were at their Indianapolis home with the front door closed and locked. Baxter heard a rattling sound at the door and Cheeks approached the door. Baxter heard approximately seven gunshots and saw bullets coming through the walls. Cheeks, who had been shot in the chest, collapsed in Daniel's arms.

[6] Neighbors Charles Gilbert and Rodney Evans ("Evans") were walking home when they heard gunshots. They saw someone in a black hoodie run past them, jump into a small gold vehicle, and drive away rapidly "spinning their tires." (Tr. Vol. II pg. 29.) Almost immediately afterward, Baxter banged on Evans's door and asked to call 9-1-1 because his sister had been shot. When police arrived, they discovered that Cheeks was deceased.

[7] After dark that evening, Cain arrived at Mack's house. He was driving a gold car. Cain, who seemed to be out of breath, reported to Mack, "I did it." (Tr. Vol. II pg. 96.) Cain elaborated that he had knocked on the door and when someone responded, he shot. Cain did not specifically identify his target, but Mack understood it to be Cheeks due to the earlier allegation of theft.

[8] Cain also visited the Cheeks residence, dressed in black and driving Vivian's gold Impala. He asked Baxter "what was going on" and Baxter replied that Cheeks had been shot. (Tr. Vol. II pg. 81.) Baxter invited Cain inside, but Cain declined the invitation and immediately left.

[9] Cain went to see his former girlfriend, Daniesha Miller ("Miller"). Cain told Miller that he was the person who shot Cheeks. He said that the bullets had been fired through a door.

[10] One week after the shooting, Cain purchased a gun from Mack. On January 8, 2015, Cain was arrested on an unrelated matter. During his incarceration, Cain spoke with Mack during recorded telephone calls. In one call, Mack stated that Cain probably thought he was being arrested for the "M" when police arrived, and Cain responded affirmatively. (State's Ex. 86.) Mack asked whether police had found the "whatchamacallit," and Cain responded in the negative. (State's Ex. 86.)

[11] On January 29, 2016, Cain was charged with Cheeks' murder and illegal possession of a handgun. He waived his right to a jury trial, and his bench trial commenced on September 28, 2016. Cain was found guilty as charged. On October 19, 2016, the trial court imposed upon Cain consecutive sentences of fifty-eight years for murder and ten years for the handgun conviction. He now appeals.

# Discussion and Decision

## Admission of Evidence

[12] The State's theory of motive was that Cain believed Cheeks had stolen money from Vivian. Without objection, the State elicited testimony from Mack that Cain had angrily complained of "a bitch [taking] his momma's credit card." (Tr. Vol. II pgs. 112-13.) Miller also testified, without objection, that there had been a theft involving Vivian Cain's credit card, Cory used the money to buy Cheeks a car, and Vivian had intended the money to be saved for Cain. However, when the State attempted to elicit testimony as to who relayed this information to Miller, Cain lodged a hearsay objection. The State responded that the evidence was not being offered for the truth of the matter, and the trial court permitted Miller to testify that Vivian had told her that Cheeks and Cory stole money that was being held for Cain during his incarceration.

[13] Subsequently, Detective Dutrieux testified, without objection, that Vivian had filed a police report in April of 2014. When the State moved to admit the police report, Cain objected, again on hearsay grounds. The trial court admitted the police report for "the limited purpose of the fact the report was filed." (Tr. Vol. II pg. 240.) The court observed that the truth or falsity of the internal allegation – that Cheeks stole from Vivian – was not relevant; rather, the relevance was whether Cain's belief of theft was formed and provided motive.

[14] We reverse a trial court's evidentiary ruling where the appellant demonstrates a manifest abuse of discretion resulting in the denial of a fair trial. *State v. Hunter*,

898 N.E.2d 455, 457 (Ind. Ct. App. 2008). We consider only the evidence in favor of the evidentiary ruling and the unrefuted evidence in the appellant's favor. *Id.*

[15] Cain argues that the testimony describing Vivian's allegation and the police report were inadmissible hearsay not excepted by Indiana Rule of Evidence 803. The State responds that the challenged evidence is not hearsay and thus the exceptions of Rule 803 are not implicated. We agree with the State.

[16] Evidence Rule 801 defines hearsay as a statement that: "(1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Here, the trial court, also the finder-of-fact, specified that the content of the police report and the content of Vivian's allegation were not admitted into evidence for the truth of the assertions. The trial court explicitly observed that it was irrelevant whether Cheeks had in fact committed a theft; however, the fact that Vivian had made such allegations was relevant to motive. Because the challenged evidence was not "offered … to prove the truth of the matter asserted," Evid. Rule 801, it was not hearsay. Cain has demonstrated no abuse of discretion in the admission of evidence.

## Sufficiency of the Evidence

[17] Cain contends that the State failed to present sufficient evidence of probative value to support either his conviction for Murder or Possession of a Handgun by a Serious Violent Felon.

[18] Pursuant to Indiana Code Section 35-42-1-1, a person who knowingly or intentionally kills another human being commits murder. The State alleged that Cain knowingly killed Cheeks. Pursuant to Indiana Code Section 35-47-4-5(c), a serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon. The State alleged that Cain is a serious violent felon after having been convicted of Battery, as a Class C felony, and that he possessed a handgun after that conviction.[3] We will affirm a conviction unless no rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *Tuggle v. State*, 9 N.E.3d 726, 736 (Ind. Ct. App. 2014).

[19] Cain concedes that the State presented testimony that he confessed to killing Cheeks. He also concedes that Mack testified that he sold a gun to Cain approximately one week after Cheeks' shooting. Nonetheless, Cain asserts that the testimony of these witnesses should be discarded under the incredible dubiosity rule. Cain asserts that Miller was a reluctant witness who provided contradictory deposition testimony and was "coerced" by subpoena to testify. Appellant's Br. at 27. He further asserts that Mack was a criminal "coerced through his need to escape his own criminal prosecution." Appellant's Br. at 28.

---

[3] Cain conceded at trial that he had a prior conviction for Battery, as a Class C felony.

[20] Our supreme court has recently defined and clarified the scope of the incredible dubiosity rule in *Moore v. State*, 27 N.E.3d 749 (Ind. 2015). The Indiana Supreme Court stated: "Under this rule, a court will impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted 'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Id.* at 755 (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994). The incredible dubiosity rule applies only '"where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion and there is a *complete lack of circumstantial evidence* of the appellant's guilt."' *Id.* (quoting *Tillman*, 642 N.E.2d at 223) (emphasis in original).

[21] This is not a case in which the State presented a sole witness whose testimony was uncorroborated. Mack testified concerning Cain's possession of a weapon, both before and after the shooting. The State also presented photographic evidence of Cain in possession of firearms. Mack testified that Cain had been angry because of an alleged theft from his mother and he had showed up on the evening of Cheek's murder claiming that he "did it." (Tr. Vol. II pg. 96.) Miller testified that Cain had confessed to shooting Cheeks. She related Cain's report that he had shot through a door. This was corroborated by the physical evidence obtained at the scene and by Baxter's testimony. Also, Cheeks' neighbors described seeing someone dressed in black flee in a gold vehicle immediately after the shots were fired. Baxter testified that Cain had been dressed in black and driving a gold vehicle on the evening of the shooting.

[22] In sum, there were multiple witnesses who provided corroborated testimony. To the extent that Cain suggests some witnesses had their own motivation for testifying, such does not satisfy the criteria for application of the incredible dubiosity rule. We will not reweigh the credibility of multiple witnesses.

[23] Cain also argues that, even if the witnesses against him are to be believed, the State at most established his commission of reckless homicide, a lesser included offense of murder. The element that distinguishes murder and reckless homicide is the level of mens rea required. *Sanders v. State*, 704 N.E.2d 119, 122 (Ind. 1999). Either an intentional or a knowing killing is required for a murder conviction. *Ritchie v. State*, 809 N.E.2d 258, 270 (Ind. 2004). Here, the State charged that Cain acted knowingly. A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. *Id.*; I. C. § 35-41-2-2(b). A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. I. C. § 35-41-2-2(c).

[24] The intent to commit murder can be inferred from the use of a deadly weapon in a manner likely to cause death or serious injury. *Williams v. State*, 700 N.E.2d 784, 787 (Ind. 1998). The evidence most favorable to the murder conviction suggests that Cain lured his victim to the door by rattling or knocking on the door, and he then fired three shots into the door. Several other shots were fired through the windows on either side of the door. This evidence is sufficient to permit the fact-finder to conclude that Cain knowingly killed

Cheeks. There is sufficient evidence to support Cain's convictions for murder and possession of a handgun by a serious violent felon.

# Sentencing

[25] Indiana Code Section 35-50-2-3 provides that a person convicted of murder faces a sentencing range of forty-five to sixty-five years, with the advisory sentence being fifty-five years. Indiana Code Section 35-50-2-5.5 provides that a person convicted of a Level 4 felony faces a sentencing range of two years to twelve years, with the advisory sentence being six years. In imposing consecutive sentences of fifty-eight years and ten years, respectively, the trial court found one mitigating circumstance, Cain's family history, and several aggravators: criminal history, violation of parole, and endangerment of others by firing numerous shots into an occupied residence.

[26] Cain contends that the trial court abused its discretion by recognizing improper aggravators and imposed consecutive sentences in reliance upon those improper aggravators. He also contends that his aggregate sixty-eight-year sentence is inappropriate.

## Abuse of Discretion

[27]  Sentencing decisions are within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. However, a trial court may be found to have abused its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains reasons for

imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given are improper as a matter of law. *Id.* at 490-91. The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* at 491. The weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.*

[28] Cain asserts that the number of shots fired should not have been considered in aggravation of his sentence for murder. According to Cain, this is evidence of his recklessness and militates toward leniency in sentencing. We have rejected Cain's argument that he acted with mere recklessness, *supra*. Moreover, although Cain killed Cheeks by firing a gunshot, he fired several shots in addition to the fatal one. In so doing, he endangered at least one person other than his murder victim. A trial court may consider the particularized circumstances of a crime as an aggravator. *Gellenbeck v. State*, 918 N.E.2d 706, 712 (Ind. Ct. App. 2009). Cain has shown no abuse of discretion in this regard.

[29] Cain also argues that the trial court abused its discretion by using his 2013 battery conviction to aggravate his instant sentences. He observes that the battery conviction was the same conviction used to establish that he is a serious violent felon.

[30] In its sentencing statement, the trial court said:

> A significant aggravator for this one [case], however, is the conviction for the battery, in the sense that it was a crime of violence and was done by means of a deadly weapon, although I think in that case the deadly weapon was brass knuckles as opposed to a weapon.

(Tr. Vol. III pgs. 34-35.)

[31] In *Hatchett v. State*, 740 N.E.2d 920 (Ind. Ct. App. 2000), *trans. denied*, a panel of this Court held that a defendant who had been convicted of being a serious violent felon in possession of a firearm could not have his sentence enhanced by the same prior conviction that formed the basis of the firearm charge. The Court noted that a factor that constitutes a material element of a crime cannot be considered as an aggravating factor. *Id.* at 928. *See also Shell v. State*, 927 N.E.2d 413 (Ind. Ct. App. 2010) (it was improper to rely upon a prior dealing conviction as an aggravating factor, where the defendant's conviction for being a serious violent felon in possession of a firearm was based on that dealing conviction).

[32] Here, Cain's conviction for being a serious violent felon in possession of a firearm was based on his 2013 battery conviction. To the extent that the trial court relied upon the battery conviction to enhance the sentence for possession of a firearm by a serious violent felon, it was improper. However, the trial court was free to consider the remainder of Cain's criminal history. He has been adjudicated delinquent on three occasions. He has had convictions for carrying a handgun without a license, possession of marijuana, criminal conversion, and criminal trespass. He was on parole when he committed the instant offenses.

Moreover, in addition to Cain's criminal history and failure of rehabilitative efforts, he has had numerous other contacts with the criminal justice system that did not result in convictions.

[33] When a trial court has abused its sentencing discretion in some regard, remand for resentencing is not required if the reviewing court can say with confidence that the trial court would have imposed the same sentence based upon proper consideration of the reasons supported by the record. *Anglemyer*, 868 N.E.2d at 491. Here, in light of Cain's criminal history and the circumstances of his crimes, we are confident that the trial court would have imposed the ten-year sentence for possession of a handgun by a serious violent felon absent consideration of the battery conviction. A remand for reconsideration of aggravating and mitigating circumstances is not warranted.

## Consecutive Sentences

[34] The decision to impose consecutive or concurrent sentences is within the trial court's sound discretion and is reviewed only for an abuse of discretion. *Gellenbeck*, 918 N.E.2d at 712. Although a trial court is required to state its reasons for the imposition of consecutive sentences, it may rely upon the same reasons to impose an aggravated sentence and to impose consecutive sentences. *Id.* Here, the trial court did not articulate separate reasons for the consecutive sentences. Cain asserts that the trial court "by relying on the two invalid aggravating circumstances … abused its discretion in entering consecutive sentences." Appellant's Brief at 41.

[35] We have concluded that only one aggravating circumstance was improperly found, and that only as to the conviction for possession of a firearm by a serious violent felon. There remain valid aggravating circumstances recognized by the trial court, including criminal history, failure of rehabilitative efforts, and particularized circumstances of the murder. A single aggravating circumstance may support the imposition of consecutive sentences. *Hampton v. State*, 873 N.E.2d 1074, 1082 (Ind. Ct. App. 2007). We conclude that the trial court did not abuse its discretion in imposing consecutive sentences.

## Appropriateness of Sentence

[36] Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of such review is to attempt to leaven the outliers. *Id.* at 1225.

[37] When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision, but we accord due consideration to that decision, recognizing the unique perspective of the trial court. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Accordingly, a defendant "'must persuade the appellate court that his or her

sentence has met th[e] inappropriateness standard of review.'" *Anglemyer*, 868 N.E.2d at 494 (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). In conducting our independent review, we "should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225.

[38] As to the nature of the offense of murder, Cain made sounds luring his victim to her front door. He then fired at least seven shots into a dwelling where Cheeks lived with her four-year-old child, her mother, and her brother. This was apparently in retaliation for an alleged theft. As to possession of a handgun by a serious violent felon, Cain possessed more than one handgun after he had been convicted of Battery, as a Class C felony. Within the month prior to Cheeks' murder, Cain had been photographed displaying handguns.

[39] As to the character of the offender, Cain joined a gang, the Street Family. He has not attained a high school diploma, a GED, or gainful employment. He has a history of criminal activity without interruption. He was adjudicated delinquent on multiple occasions, for having committed acts that would be conversion, trespass, theft, and intimidation if committed by an adult. As an adult, Cain was twice convicted of possession of marijuana. He was convicted of trespass, carrying a handgun without a license, and battery. The battery was committed upon a woman who had testified against Cain in a former murder trial, where he was acquitted. An evidentiary exhibit presented at the sentencing hearing indicated that Cain's act of retaliation included stomping on

the victim's face, kicking her in the chest, and punching her in the head while he was wearing brass knuckles.

[40] Cain was on parole when he committed the instant offenses. He has in the past violated conditions of probation and a community corrections placement. During his current incarceration in the Department of Correction, he accrued ten misconduct reports. In sum, the nature of Cain's offenses and what is known of his character do not militate toward a lesser sentence than that imposed.

[41] Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant appellate revision.

## Conclusion

[42] Cain has not shown that the trial court abused its discretion in the admission of evidence or in sentencing Cain. Cain's convictions are supported by sufficient evidence of probative value. His aggregate sixty-eight-year sentence is not inappropriate.

[43] Affirmed.

Vaidik, C.J., and Robb, J., concur.